## Ross, By et al. v. Kohler, et al.

(Decided March 17, 1915.)

Appeal from Jefferson Circuit Court
(Common Pleas Branch, Fourth Division).

1. Arrest—On Criminal Charges.—If an officer having a warrant for the arrest of a person, or if he has no warrant, and the person commits a misdemeanor in his presence, or if he has reasonable

grounds for believing that such person has committed a felony, he may lawfully arrest such person, and deliver him to a magistrate, and the officer is not responsible for mistreatment thereafter suffered by such person at the hands of other officers or persons, or injuries, or inconveniences from his confinement in prison.

2. Arrest—Justifiable Criminal Charges—When Private Person Not Liable.—If a private person has justifiable grounds for causing criminal or penal process to be issued against another, he is not liable in damages for the tortious manner of its execution by an officer, or for the deprivation of the other's liberty, or for any mental or physical sufferings which the other may be caused to endure, unless the mistreatment was prompted by the person who caused the process to issue.

3. Arrest—Wrongful Arrest by Officer—Liability of Officer.—If an officer makes a wrongful and unjustifiable arrest, he is responsible for all the direct consequences of such arrest, and is liable for all damages resulting to the person arrested, from mistreatment at the hands of other officers or persons, into whose custody the officer places the arrested person.

4. Arrest—When Private Person Causes—Liability for Wrongful Arrest.—If a private person causes a wrongful and unjustifiable arrest of another, he is liable in damages to the other, for all the loss of time, physical inconveniences, and mental sufferings endured by such person, which are the direct consequences of such arrest.

5. Arrest—Action for False Arrest—What Compensation Plaintiff Entitled to.—The successful plaintiff in a suit for false arrest and imprisonment is entitled to compensation for all the natural and probable consequences of the wrong, including mental sufferings from humiliation, indignity, and disgrace, injury to the person, physical suffering, interruption of business, and loss of time from the restraint.

6. Arrest—Action for False Arrest—When Verdict for Will Not Be Disturbed.—In a case for false arrest and imprisonment, the court will not disturb the verdict of a properly instructed jury, on account of the sum allowed for damages being excessive, unless it appears that the jury has flagrantly abused its discretion, or was actuated by passion or prejudice.

7. New Trial—When Order Granting Erroneous.—Where a verdict of a jury has been made, and a judgment of the court rendered thereon, and the court grants a new trial for the sole reason of an error of law made upon the trial, which, in fact, was not an error, the order granting the new trial and setting aside the verdict will be held to be erroneous, unless there existed some other ground, for which a new trial ought to have been granted.

8. New Trial—When Order Granting Should Be Set Aside.—Where there has been a verdict of the jury, and a judgment of the court thereon, and this verdict and judgment are set aside by the trial

court, and a new trial granted, and after a second trial is had and a second judgment rendered, and upon appeal the second judgment is reversed, and it is, also, adjudged that the order granting the new trial after the first judgment, was erroneous, the Court of Appeals will direct that the order granting the new trial, after the first judgment, be set aside, and the first judgment reinstated and entered, to have effect as of the date of its original rendition, instead of the judgment appealed from.

THOMAS C. MAPOTHER and CHESLEY H. SEARCY for appellants.

W. J. O'CONNOR, PENDLETON BECKLEY and J. M. LEE for appellees.

OPINION OF THE COURT BY JUDGE HURT—Reversing.

The appellant, Marie Ross (nee Boutellier), was a girl, seventeen years of age, and the daughter of a respectable family, who lived on Milton Avenue, in Louisville, Kentucky, at the time of the event, hereinafter, related. She brought this suit in the Jefferson Circuit Court against the appellee, Robert J. Kohler, and the surety upon his official bond, Georgia Insurance Company. The appellee, Kohler, was a lieutenant of police in the city of Louisville.

The appellant, by her petition and amended petition, complains that about the 20th day of March, 1913, the appellee forcibly and wrongfully arrested her, and compelled her against her will, to go with him in an automobile to the city hall, and there delivered her into the custody of other persons, who displayed firearms before her in a very menacing way, and quizzed her very offensively; that she had not been guilty of any kind of an offense for which she might be lawfully arrested, and that the appellee did not have any warrant for her arrest, nor reasonable grounds for believing her to have committed a felony, and that she had not been guilty of any misdemeanor, or any infraction of the ordinances of the city in his presence. The appellees answered, traversing the allegations as to damages suffered by her and denied that she was wrongfully arrested, or wrongfully required to accompany the officers against her will from her home to the city hall, but the answer failed to deny that the appellee did arrest her, or did compel her to go with him to the city hall against her will. Upon a trial the jury found a verdict for the appellant in the

sum of $750.00 in damages. The appellees filed grounds for a new trial. In the grounds for a new trial, they complained that the court was in error to their prejudice, by permitting, over their objection, proof to be made by appellant of what occurred in the city hall after she arrived there, and when Kohler was not present; and, also, complained of the verdict being excessive; and of misconduct of the counsel for appellant upon the trial. The circuit court sustained the motion to set aside the verdict of the jury, and granted a new trial upon the sole ground, that it was in error in admitting the evidence for appellant complained of, and that without that evidence, the verdict was excessive. This trial occurred in March, and the new trial was granted on the 18th day of April. The appellant excepted to the rulings of the court granting a new trial, and prayed an appeal to this court. On the 8th day of June the case came on again for trial, and resulted in a verdict of the jury for one cent in damages in favor of the appellant, and judgment was rendered accordingly. The appellant then filed grounds and moved the court to grant her a new trial and to set aside the last judgment, and to substitute and enter for it the first judgment in the case. The grounds relied upon by appellant for a new trial were, that the court erred in refusing to allow the appellant to make proof of the occurrences at the city hall when, Kohler was not present; and because of the admission, over her objection, of incompetent testimony offered by the appellee; and refusing to instruct the jury as set out in an instruction that was offered, marked ''A;'' and because the court erred in instructing the jury; and that the verdict was contrary to the law and the evidence. The court overruled her motion for a new trial, and to this she excepted. The court, also, overruled her motion to enter the judgment rendered upon the first trial as the judgment of the court, or to set aside the order granting a new trial, after the first judgment. To these rulings she also excepted, and now appeals to this court.

The instructions of the court given upon the last trial are the same as those given upon the first trial, to which no objection was made by the appellant at their giving upon the first or last trial. Not having made any objection to the instructions given, until the motion for a new trial, the appellant cannot now complain of the instructions which were given by the court, and besides,

the instructions seem to fairly present the issues raised in the evidence, and upon the pleadings, and the measure of damages fixed by the instructions seems to be correct.

Upon both trials the verdict of the jury has been to the effect, that the appellant was arrested by the appellee without right, and forcibly and against her will, she was required to accompany him to the city hall, and besides, as above mentioned, by his answer, he fails to deny that he did either of these things. We are, however, of the opinion, that the court below was in error upon the last trial, when it excluded from the consideration of the jury, over the objection of the appellant, evidence relating to the things which occurred at the city hall after appellant arrived there, and before she was permitted to leave. For the purpose of determining the correctness of this ruling, as well as others in the case, it will be necessary to give a short statement of the facts which the evidence conduces to prove. The evidence upon each trial was substantially the same, except in the last trial, the evidence as to what occurred in the city hall when Kohler was not present, was excluded over the objection of appellant.

The evidence for appellant conduces to prove, that on the evening of March 20th, 1912, at about seven o'clock, an automobile, marked with letters upon the side, "Louisville Police Patrol," came to Milton Avenue, and stopped about two doors from the door of appellant's father's home. The automobile was accompanied by the appellee, Moritz Stickler, the guard, and the chauffeur, dressed in the uniform of policemen of the city; that appellee first went into the house of one Elfring, and then came out and went into the house of one Haering, who lived next door to Boutellier, and coming out of the house of Haering, he approached the yard gate at the Boutellier home, and inquired, if Marie Boutellier lived there. Being answered in the affirmative by one of the family, and the appellant, who was then roller skating upon the sidewalk, coming up at that time, he was told that there she was, and then he commenced to say something to her, when he was invited to come into the house by the sister of appellant, which invitation he accepted, and the appellant then inquired of him what he wanted with her, and he said, "That Major Ridge wanted to talk with her, and had ordered him to come and bring her down to the city hall with him." She protested that

she had not been guilty of anything, and that there must be some mistake about it, and asked who Ridge was, stating that she did not know him. He informed her that Ridge was the night chief of police. At her request, he then stated that if she would accompany him to Haering's house, that he would call up Ridge and talk with him over the telephone. They then went into Haering's house, where the appellee called up some one, appellant did not know who, and said that he had a girl there named, Marie, and that the reply to this was, "to bring her on down." There were other communications between the appellee and the person to whom he was talking, resulting in appellee asking appellant, if she had ever been to Bierod's, on First and Market. She answered that she had not, that she worked at Roth's jewelry establishment, at First and Market. He then hung up the receiver, and said that she would have to go down to the city hall with him. She asked him to permit her to go on the street car, or said that she would go with him on the street car, but he replied, that he had orders to bring her down with him. They went into the appellant's home for the purpose of her securing her cloak and hat, and while there, her mother proposed, that she would take the appellant down to the city hall on the street car, when appellee said that he had orders to bring her down with him. The automobile was then moved away a square and one-half to avoid attracting the attention to the fact that she was being arrested and taken away by the police, but the movements of appellee and the presence of the police patrol had caused quite a number of people to congregate, and when they went out of appellant's home, the appellee had to order the people out of the way, so as to make an exit from the yard. She accompanied him in the automobile to the city hall, where he carried her into an office and delivered her to some other persons in a room, when a person whom she did not know, with two pistols in his hands, took her into another room, and there presenting the pistols toward her, inquired, if she had ever seen them before, and when she stated that she had not, he inquired of her, if she was at Leiderkranz Hall on the night of the homicide, which had recently occurred, and when she answered that she was not, and never had been there in her life, he then asked her about different men and women, of whom she had never heard, and as to whether

or not she attended dance halls, and when she answered in the negative, some of the parties present, said they had made a mistake, that she was not the party wanted. She was then taken into another room, where another officer was, and the statement was made to him, that she was innocent, and they had made a mistake, and she was then permitted to leave the city hall. While she was being quizzed by the individual with the pistols, who was dressed in plain clothes, two policemen in uniform, were standing around her, and gazing very intently upon her. The appellee was not present in the room to which the individual with the pistols carried her. When she emerged from the room, she again met appellee, who was standing near, and who inquired of her, if she had money to pay her car fare back home, and she answered that she had. He then invited her to accompany him in the automobile, as he was going in a square or two of her home. She did accompany him so far as he went in the automobile, and upon leaving it, thanked him. She testified that she was greatly chagrined and mortified and frightened by her experiences, and in addition to that, contracted a very severe cold, by riding in the automobile, which traveled very fast and she being warm from her exercises in skating. As to the circumstances of her arrest, and what took place before she started to the city hall, she is corroborated by her family and neighbors. The evidence offered by the appellees, tends to show that on the day upon which the arrest occurred, of which the appellant complains, that Carroll, who is a sergeant of police and in charge of the switch board in the office of the night chief of police, called up Kohler by telephone, and told him that there was a girl, named Marie, whose other name he did not know, and who lived on Milton Avenue, next door to Haering, and for him to go up there and get her and bring her down to the chief's office, that the night chief wanted to speak to her. Kohler, accompanied by Stickler, and the chauffeur, went to Milton Avenue, and inquired where Haering lived, and went in and asked him if there was any girl in the neighborhood by the name of Marie. He received information that there were two Maries there, one of whom was Marie Green, and lived on the opposite side of the street, and the other, Marie Boutellier, who lived in the adjoining house; that he went from there to the Boutellier home, where he found the appellant, and told her

that Major Ridge wanted to speak to her, and to make sure, they would go to the telephone and call him up; that, when they went to the telephone, Carroll told him to ask her, if she worked at Roth's jewelry store at First and Market, and upon receiving an affirmative answer, Carroll told him to ask her, if she knew a certain man, and that she answered, "Yes," and he (Carroll) then said "to tell her to come on down," and that he, appellee, said to her, "You are wanted at the night chief's office, Major Ridge wants to speak to you," and that she said, "Alright;" that she went and got her hat and jacket at her home, and that he and she then got into the automobile, and went down to the city hall, and entered into the city hall at a place where one door leading to the south goes into the night chief's office, and the one to the north, into the officers' room, and when they got there the night chief's office was closed, and that he went in and said to Sergeant Ridge, "That there was the young lady," and at about that time, he turned around, and she was gone into the "assembly" room, and that was the last he saw of her, and that the next he saw of her, she and Captain Hogan were standing on the steps, and that he inquired of her if she had money to pay her car fare home, and she answered, "Yes," and he then invited her to get into the machine, that he was going to Preston and Burnett Streets, and she could go to Preston and Oak and make better time. She got into the machine and rode to Preston and Oak, and got out, and thanked him.

It is very apparent that the appellee, Kohler, although he stated that he did not know for what purpose she was desired at the city hall, knew that he was bringing her to the city hall for the purpose of her being taken in charge by other officers, and there to be quizzed and examined for some purpose or other.

If the appellee, Kohler, in the first instance, had had a right to make the arrest, he would not have been liable in any way for subsequent mistreatment which appellant received at the hands of other parties, into whose custody she was lawfully delivered by him, and with which mistreatment, the appellee had nothing to do. If an officer, armed with a warrant, executes it by the arrest of the party accused, and as the law requires, takes him before a magistrate, or commits him to jail, if the warrant so authorizes him, the officer making the arrest

is not in any way liable for the damages suffered by the party, either by confinement in jail, or by the hands of any other officers, into whose custody the accused may be placed; or, if one is justified in having criminal or penal process issued against another, and does so, such person is not liable for any damages which may result to the accused party by the mistreatment of the officer executing the process, or resulting from his confinement in jail, where he is placed by a committing magistrate; but, if an officer makes a wrongful arrest, and the arrest and detention are wrongful, he is then responsible for all the damages which are suffered by the arrested party, and which are the direct results of the wrongful arrest and detention.

In the case of I. C. R. R. Co. v. Wilson, 31 R., 789, where it was alleged that a policeman had unlawfully arrested Wilson, and accused him of the crime of larceny, and searched his person in a public place, in order to find evidence of his alleged guilt upon him, the court held that testimony relating to the effect, after his release, which such arrest and search had upon his nervous system, as the result of such arrest and search, and evidence to the effect, that after he was released from arrest, it was necessary for him to have the services of a physician, and treatment in a sanitarium, were all facts competent to be proven, touching his claim for damages.

In the case of Johnson v. Collins, 28 R., 375, a policeman had wrongfully arrested the plaintiff, and taken her before a judge, who committed her to jail. This court held that she was entitled to damages for her deprivation of liberty while in jail, and the impairment of her health arising from her confinement in jail; and her mental and physical sufferings, which were the direct and proximate results of her imprisonment. If the officer had had justifiable grounds for her arrest, as, for instance, she had committed an offense in his presence, or if he had had reasonable grounds to believe that she had been guilty of a felony, and as a result had made the arrest, or if he had been armed with a warrant for her arrest, he would have been held harmless from any things which she might thereafter suffer as a consequence of the arrest.

In the case of Hall v. Hall, 3 Allen, 5, Hall was arrested by an officer, on a warrant issued by a tax col-

lector, for unpaid taxes, and was committed to jail upon the warrant. The court held that the officer was not justified in making the arrest, because, under the laws in that jurisdiction, he could not take the body by virtue of a warrant of that kind, where there was property which could have been taken for the payment of the taxes, and as a result of the illegal arrest, that the officer was liable for the damages suffered by Hall for his detention in prison, and the inconvenience and suffering to which it subjected him, as being a direct consequence of the illegal act of the officer in the service of the distress warrant, and proof of such inconvenience and suffering was, therefore, competent.

In the case of Fenelon v. Butts, 53 Wis., 344, Butts, by means of some preliminary proceeding, which the court held to be unauthorized and illegal, accomplished the arrest and imprisonment of Fenelon, and it was held that proof of the condition and circumstances of the Fenelon family, and the filthy condition of the jail, in which she was confined by Butts and others, were proper elements of damages to be recovered by her. The arrest in this case having been held to be wrongful.

The cases of Jacques v. Parks, et al., 96 Maine, 268; Scott v. Flowers, 60 Neb., 680; Abrahams v. Cooper, 81 Pa., 232; Drumm v. Cessnum, 61 Kan., 472; and Kindred v. Stitt, 51 Ill., 401, are all in accordance with the authorities above cited.

In Miller v. Fano, 134 Cal., 109, a police officer having a warrant of arrest for one man, by a mistake as to his identity, arrested another, and delivered him to a constable from Los Angeles, who took him to that place and put him in jail. The court held upon a suit for damages for the false arrest and imprisonment against the officer first making the arrest, that the imprisonment at Los Angeles, and the inconveniences of it, and the condition of the prison, were proper elements of damages to be considered by the jury. The court used the following language:

"He placed plaintiff in custody of a Los Angeles officer, and all the facts and circumstances connected with his unlawful imprisonment were admissible in evidence." Sutherland on Damages, 2 Ed., Section 1257.

In the case of S. A. & A. P. Ry. Co. v. Griffin, 20 Texas Civil Appeals, the court held, that in an action for damages for imprisonment on a false charge, the plain-

tiff may give in evidence the facts as to his treatment while in confinement, at the hands of the public authorities, as bearing on the amount of damages.

Ocean S. S. Co. v. Williams, 69 Ga., 251; Creager v. Osbourne, 7 Blackford (Ind.), 74; and Hopkins v. Garthwaite, 28 La., 325, are not applicable to the question in issue. In these cases, *supra*, the court held that the arrest was legal, and for that reason the party causing it was not liable for after treatment, where they did not prompt the after treatment.

In the case at bar, the arrest being unlawful, and the detention unlawful and unauthorized, and the proof conducing to show that appellee, Kohler, delivered the appellant at the city hall, into the hands of other officers, and persons who displayed the firearms in a threatening way, and quizzed her in an annoying and offensive manner, if they did so, these things directly resulted from the unlawful arrest and detention, to which she had been subjected by the appellee. The exclusion of this testimony upon the last trial was very prejudicial to the substantial rights of the appellant, and for that reason, the court below should have set aside the verdict and judgment in the last trial, and granted her a new trial.

It follows that the trial court was in error, when it granted a new trial, after the first trial and judgment, on the ground, that it had erroneously permitted the appellant to put in evidence the occurrences at the city hall, after appellee had taken her there, and turned her over to others in the room, and was not present himself.

The counsel for appellees, however, insist, that they were entitled to a new trial, because of the misconduct of appellant's attorney, by prejudicial statements made by him to the jury in his closing argument, and because the court misinstructed the jury, as to the law of the case, and refused to peremptorily instruct the jury to find for appellees at the conclusion of appellant's testimony, and at the conclusion of all of the testimony; and because the verdict was excessive.

As to the instructions, it does not appear that appellees offered any instructions in writing, which the court was asked to give. The court did not owe the duty to give an instruction, unless it was offered in writ-

ing. Traders Bank v. Henry, 105 Ky., 107; Webster v. Green, 22 R., 1456.

Aside from this reason, however, the evidence was amply sufficient of the forcible arrest and detention of appellant to require the court to submit the issue to the jury. The instructions given by the court to the jury, fairly present the issues, and were not in any wise prejudicial to appellees.

The alleged misconduct of appellant's attorney consisted in his reference, in his argument, to the fact that the attorney for the appellees was an assistant city attorney. This statement was objected to by appellees, at the time, not because it was not true, but, because there was no evidence of it in the record. The court did not pass upon the objection, but the attorney making the statement, at the time of the objection, conceded the fact, that it was not in the record. It does not appear how this occurrence could in any wise prejudice the appellees. We do not see how the fact of a litigant's attorney, being an assistant attorney for the city, could in any wise inflame or prejudice the jury against the cause of the litigant. The other language alleged to have been used by appellant's attorney, and claimed to have been prejudicial, was not objected to by appellees, and notice of it appears for the first time, in the motion for a new trial. No mention is made in the bill of exceptions, of any language prejudicial to appellees, as having been made use of by appellant's attorney, and for that reason it is not before us for consideration. For an attorney, in the presence of the court and jury, in the trial of a case, to depart from the record, and attempt to bring into the trial statements of outside matters, which have no connection with a proper determination of the issues, and are not legitimate arguments upon an issue in the case, forgets the duty, which as an attorney, he owes to the court, and the pure administration of justice, but we cannot consider such matters, unless they are presented to us in the way provided by law. When the party complaining has waived the matter himself, by making no objection at the time, he cannot thereafter complain. The language complained of, under the circumstances was not prejudicial.

In an action for false arrest and imprisonment, the injury to the feelings, and mental sufferings, arising from the mortification, shame, fear, and humiliation,

suffered by the arrested party, from the circumstances of the arrest and detention, are proper elements for damages, to be considered by the jury as well as the physical inconveniences suffered. The rule applying in such cases is, that the successful plaintiff is entitled to compensation for all the natural and probable consequences of the wrong, including injury to the feelings from humiliation, indignity, and disgrace, and injury to the person, and physical suffering, interruption of business, and loss of time from the restraint. 19 Cyc., 368. It has been said that no sum which is not, *per se,* evidence of prejudice or corruption, is excessive for such indignities and suffering, where deprivation of liberty and injury to character result. Holburn v. Neal, 4 Dana, 120.

The rule seems to be, that in such cases, the court will not disturb the verdict of a properly instructed jury, on account of the sum of damages allowed being excessive, unless it appears, that there is a flagrant abuse of discretion by the jury, or that the jury was actuated by passion or prejudice. Taking into consideration, the youth, sex, the entire absence of a legal right to make the arrest, and the probable consequences of it, the sum of $750, the amount of the first verdict, is not excessive.

There being no ground upon which the trial court was authorized to set aside the verdict of the jury and the judgment of the court upon the first trial, the order granting a new trial was erroneous. The only ground assigned by the court for its action, was founded upon an error as to the law. In the case of Perkins v. Ogilvie, 148 Ky., 309, this court held, that "while the trial court is vested with a broad discretion in granting a new trial, yet, if it granted a new trial solely on the ground of an error of law, which in fact was not an error, and the other grounds relied upon are not sufficient to justify its action, it is error, under such circumstances, to grant a new trial."

The appeal by appellant from the judgment on the last trial brings before us for consideration the action of the trial court in granting a new trial. Both bills of exceptions are contained in the record. Being of the opinion that the trial court erred in granting the new trial, it follows, that the appellant is entitled to have the judgment appealed from set aside, and the judgment rendered on the verdict at the first trial be reinstated.

It is, therefore, ordered that the judgment appealed from be reversed, and this cause remanded to the court below for proceedings in conformity to this opinion.