## Great Atlantic & Pacific Tea Co. v. Billups.

(Decided Feb. 27, 1934.)

MARTIN & SMITH for appellant.

DYSARD, TINSLEY & PRICHARD for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

In her original petition Mrs. Maggie Billups sue the Great Atlantic & Pacific Tea Company for slander. In her amended petition she sought damages for false arrest and imprisonment. From a verdict and judgment in her favor for $500, the company appeals.

The failure of the court to sustain appellant's motion for a peremptory instruction is the only ground relied on for a reversal.

The facts are: Appellant operated a chain store in Louisa. William Harold Moody was the local manager, and Luther Haywood was the only clerk regularly employed. Miss Gladys McCowan, a school teacher and sister-in-law of Haywood, was an extra clerk employed to help out on Saturdays. On the afternoon of November 10, 1931, Mrs. Billups went to the store and purchased a gross of penny matches from Haywood. Mrs. Billups saw some candy marked, "Five for 10c," and asked Mr. Haywood if they would sell less than five. He replied that they would sell any amount she wanted. She told him to give her one, and laid down 2 cents on the counter. Haywood said, "All right, pick you up one as you go out." The candy was on her side of the counter, and as she went out she picked it up and walked down the street. At the time of this occurrence Moody and Miss McCowan were present. Miss McCowan saw Mrs. Billups take the candy, and said "something about helping herself or something like that." After she made this remark, Mr. Moody asked her if the lady took the candy, and she told him she did. On receiving this information Moody claims that he asked Haywood in a loud voice if the lady had paid for the candy, and that Haywood said, "No," but possibly he could have said it to the customer he was waiting on. Neither Haywood nor Miss McCowan remembered any such conversation. Immediately after Mrs. Billups left, Moody rushed out the door. According to Moody he circled around to her side, and did not come right in front of her when she stopped. He then said, "Did you pay anyone for that bar of candy," and she acted like she was amazed. She then reached in her pocketbook, pulled out her purse, and began counting her money as though she was in doubt as to whether she had paid or not, and handed him 2 pennies. He said, "Lady, if you paid for the candy once, I don't want you to pay it again." She rushed on up the street. He went back to the store and

found she had paid for the candy. The following is Mrs. Billups' account of what occurred in the street:

"I heard someone running behind me and he ran around in front of me and told me to stop and said: 'You didn't pay for that candy you bought.' And I said: 'I surely did.' He said: 'You did not.' And I said: 'I did.' And he said: 'Well, we didn't get it then.' And he didn't say it in a nice manner at all and I said: 'Why, I did pay for it.' And he said: 'Where did you put it?' And I said: 'I laid it down on the counter.' He said: 'Come on and go back to the store with me.' And I said: 'I will not.' He insisted that I go back and I said that I would not go back. I said: 'I am not going back over two cents.' He kept on insisting that I go back and I said: 'I will pay you again if that will do any good.' He didn't say whether it would or not and I took out the two cents and paid him again and he went on back, but he talked just as rough as he could to me and I started on down the street crying and I don't know how many people had stopped to hear it because I was so excited; there were people standing around.

"Q. 8. Now, when he first ran around in front of you you say he said for you to stop? A. Yes, sir.

"Q. 9. Did you stop? A. Yes, I almost had to stop. He was almost in front of me.

"Q. 10. You did stop? A. Yes, sir.

"Q. 11. And because he commanded you to stop? A. Yes, sir.

"Attorneys for defendant objected to the leading question.

"The Court: Do not lead the witness.

"A. I said I stopped.

"Q. 12. Did he command you to go any place with him?

"Attorneys for defendant objected—

"A. He wanted me to go back; he insisted that I go back and demanded that I go back.

"Q. 13. How did you get out of going back? A. I told him that I would pay him again if that would do any good and he didn't answer me.

"Q. 14. You say you didn't know any of the crowd that gathered up there? A. No, sir."

"False arrest" or "false imprisonment" is any unlawful physical restraint by one of another's liberty, whether in prison or elsewhere. Gariety v. Fleming, 121 Kan. 42, 245 P. 1054. "Any deprivation of the liberty of plaintiff by defendant, or any detention of him, for however short a time, by defendant, without plaintiff's consent, against his will, whether it was by actual violence, threats, or otherwise, constitutes an arrest." Miller v. Ashcraft, 98 Ky. 314, 32 S. W. 1085, 1086, 17 Ky. Law Rep. 894. In an action for false arrest the essential thing is constraint of person, and words or conduct of defendant must be such as to induce reasonable apprehension of force. Russell v. Levinsohn, 138 A. 205, 5 N. J. Misc. 765. In order to constitute a case of false imprisonment it is essential that there be some direct restraint present. It is not necessary that there should be confinement in jail or prison. Any exercise of force, by which in fact the other person is deprived of his liberty, compelled to remain where he does not wish to remain, or to go where he does not wish to go, is an imprisonment. Johnson v. Norfolk & Western Ry. Co., 82 W. Va. 692, 97 S. E. 189, 6 A. L. R. 1469. Restraint constituting a false imprisonment may arise out of words, acts, gestures, or the like, which induce a reasonable apprehension that force will be used if plaintiff does not submit, and it is sufficient if they operate upon the will of the person threatened. 25 C. J. p. 454. Whether a peremptory should have gone is to be determined from Mrs. Billups' evidence alone. The substance of her evidence is: Moody ran around in front of her and told her to stop. She "almost had to stop," and did stop because he commanded her to stop. He accused her of not paying for the candy. She told him that she had paid for it, and after some discussion informed him that she had laid the money on the counter. Moody then said, "Come on and go back to the store with me." She said, "I will not." He insisted that she should go back, and she said that she would not go back. After further insistence she said, "I will pay you again if that will do any good," but he did not answer her. She then took out the 2 cents and paid him again and he went on.

Though Moody was in the wrong in accusing Mrs. Billups of not paying for the candy, his evident purpose

was to investigate the transaction, and when she denied his accusations he insisted that she go back to the store with him for that purpose. There is nothing in his conduct or words indicating an intention on his part to take Mrs. Billups into his custody, or to subject her to his control, or reasonably calculated to lead Mrs. Billups to believe that she was deprived of her liberty or placed under restraint. What he said and did was not sufficient to induce a reasonable apprehension that force would be used if Mrs. Billups did not submit. As a matter of fact she did not submit, but paid the 2 cents rather than go back with him to the store. Liberal as the rule is, we are forced to conclude that the facts presented were insufficient to make out a case either of false arrest or imprisonment, and that appellant's motion for a peremptory instruction should have been sustained.

Judgment reversed, and cause remanded for a new trial consistent with this opinion.

Whole court sitting.