# Great Atlantic & Pacific Tea Co. et al. v. Smith.

Dec. 5, 1939.

As Modified on Denial of Rehearing Feb. 6, 1940.

586

Carroll & McElwain for appellants.

Edrington & Redmon for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Reversing.

This is an action of tort for alleged false imprisonment.

The defendants' motion to make the petition more certain and specific and, if more than one cause of action is therein relied on, that the same be separately paragraphed, having been overruled, the defendants further moved, both at the close of plaintiff's evidence and of all the evidence, for a directed verdict, which was also denied. They appeal, complaining of such rulings as erroneous, as well as other errors assigned, upon which they seek a reversal of the judgment.

In November, 1937, the appellee filed her petition and also an amended and substituted petition against appellants, seeking recovery of damages for nervous shock and mental suffering allegedly caused by the claimed misconduct of the company's agent and store manager, Robert Vaughn, in falsely imprisoning and detaining her as she was leaving its store located at First and Jefferson Streets, Louisville, Kentucky.

Plaintiff, in setting out her cause of action, seeking recovery of damages against defendants for her wrongful detention, alleges that on October 13, 1937, she visited the appellant's store; that after making a small candy purchase (which, it is admitted by Vaughn, the co-defendant and store manager, had been by him both sold her and placed in her shopping bag at the candy counter, and for which she there paid him) and as she was proceeding to leave the store, the said Vaughn, acting as the company's agent and store manager and in the course of his employment, "suddenly grabbed her and laid hold upon her hands, arms and body in the presence of a number of customers in defendant's store and imputed unto her that she had stolen certain articles from said store and thereupon forcibly, unlawfully, and against her will and consent took her into custody and detained her and deprived her of her right of freedom and locomotion and publicly searched her and her shopping bag and finding nothing  *  *  *  about her per-

son or said shopping bag except what had been bought and paid for, released her."

Further, in the petition she alleged that, by reason and as the result of such unlawful actions and conduct of the defendant company, committed by and through its store manager, Vaughn, she was caused to and did suffer great humiliation and embarrassment and was thereby damaged in her reputation and did suffer great shock to her nerves and nervous system and was made to and did become physically ill and sick and had been thereby damaged in the sum of $10,000, for which amount, with her costs, she prayed judgment.

To this petition defendants filed motion, as stated supra, to require plaintiff to make her petition more definite and certain and, if stating more than one cause of action, to paragraph same.

This motion the court ordered submitted and same having been briefed by counsel for the defendants and plaintiff and plaintiff's counsel having therein stated, in reference to the petition, that "we think it clearly sets forth but one cause of action; namely, that of false imprisonment," the court, concurring in that view and being of the opinion that "the action is for the alleged detention, other matters being in aggravation," overruled the motion.

Defendants next filed a general demurrer to the petition, which was also overruled, when the issues were completed by the defendants filing their answer and plaintiff replying thereto.

The cause coming on for trial, the defendants renewed their motion to make more definite and to paragraph the petitions, which was again overruled by the court by a nunc pro tunc order entered of its earlier order, made but not entered by the clerk, overruling the motion.

The cause then proceeded to trial, resulting in the jury's awarding plaintiff two separate verdicts, the one for compensatory damages in the sum of $2,000, the other for punitive damages in the sum of $500, upon which judgment was accordingly entered.

Appellants' motion for a new trial having been overruled, they have appealed, seeking a reversal of this judgment upon the following assignment of errors:

(1) The court's error in failing to sustain their motion to make the petition more definite and to paragraph same.

(2) The court's error in failing to give a peremptory instruction in favor of appellants, moved for at the conclusion of the introduction of appellee's evidence and at the conclusion of all the evidence, because the proof was insufficient to show a detention and there was a fatal variance between the pleadings and proof.

(3) The court's error in refusing appellants' motion for a continuance, made at the close of the case, for the same reasons.

(4) Because the actions of appellant Vaughn, in examining appellee's shopping bag, were not unlawful if done in a reasonable manner and no recovery against appellants was allowable on account of such actions and that therefore the instructions given, authorizing such recovery, were erroneous.

(5) That appellee's claim being for mental disturbance only, without physical injury, no recovery was allowable, for which reason the court erred in overruling their demurrer to the petition and in giving an instruction authorizing a recovery.

(6) That even if compensatory damages for mental suffering were recoverable, the evidence was not sufficient to support a verdict of $2,000 compensatory damages and that the total verdict was so large as to impel the belief that it was the result of passion and prejudice.

(7) That the court was in error in authorizing a recovery of punitive damages.

The facts as shown by the proof introduced respectively by the parties in support and defense of the cause of action alleged are that on the morning of October 13, 1937, the appellee, an elderly widow then some sixty-eight years of age and who had, for some fourteen years been and was then living in Louisville, started out from her home with her friend and neighbor, Mrs. Hoppenjohn, on a shopping expedition.

After first visiting several stores, at which Mrs. Smith purchased a few articles (which, as purchased, she put in the shopping bag she carried), they next went to the appellant's store so that Mrs. Smith could buy some candy, on which she states appellant was advertising a special sale. Upon entering the store, Mrs. Hop-

penjohn waited at the door, while Mrs. Smith, after inquiring where the candy sale was being conducted, went directly to the candy counter, where she purchased the candy wanted and there paid the clerk who waited on her (who it develops was the store manager and appellant, Mr. Vaughn), who, upon being paid for the candy, placed it in Mrs. Smith's shopping bag along with the other articles she had purchased elsewhere and was carrying therein. She states that she then, having thus bought what she had come to the store for, went no further about the store, but at once started back towards the entrance to rejoin her friend there awaiting her and leave the store.

She states that as she was thus leaving and was passing through the narrow turnstile exit next to the checking counter, Mr. Vaughn, the manager of the store (who had left the candy counter and "shifted" over to the checking counter) called to her in a loud, and unpleasant voice, saying, "What have you there?", to which she replied, "Nothing but what belongs to me," whereupon "he stepped around the corner of the counter and took me by the wrist and my bag and pulled me around, and looked through it, and said, 'you can go now.'" She testifies that Mrs. Hoppenjohn was at the time standing near the door and within easy hearing and clear view of what was said and done there by Mr. Vaughn.

Appellee states that Vaughn, upon taking hold of her wrist and bag, stopped her against her consent and that she was detained by him against her will; that only after Vaughn had grabbed and publicly searched her bag and found nothing therein but what she had paid for and belonged to her did he hand it back to her and tell her that she could go, when she at once went home on the street car, accompanied by Mrs. Hoppenjohn, and went to bed, where she remained all the rest of that day and the next. When asked what was the effect of Vaughn's detention of her, she replied, "I have been under the doctor's care ever since. * * * I don't sleep at night, and it has bothered me all the way through. It just tore up my nerves. I don't know what I am doing; my nerves are wrecked, and it just bears on my mind." She further testified that she had suffered great humiliation and mortification because of Vaughn's treatment of her, by which it appeared he was accusing her of stealing.

No physical injury, however, was either alleged or testified to as having been caused by Vaughn's actions, i. e., either by his assault or detention, nor was any claim made for damages for physical injury as resulting therefrom.

The testimony of appellee's witness, Mrs. Hoppenjohn, who heard and saw what was said and done by Vaughn to appellee upon this occasion, tends to fully corroborate plaintiff's account of what then transpired and its effect on Mrs. Smith's mental condition and nervous system.

Dr. McKenney, also called as a witness, testified that he was Mrs. Smith's regular physician and that she had come to him for treatment just after her detention by Vaughn, when he found, upon examining her, that she had suffered a nervous breakdown and was undergoing much mental suffering; that he continued to treat her for this trouble, but had been unable to relieve her; that her condition, of nervous and mental suffering, was in his opinion due to the mortification caused her by this experience. Also he testified that, as a physician, he was unable to say just when she would recover or whether her condition of nervous shock and mental suffering would ever improve.

The defendants, at the close of plaintiff's evidence, moved for a directed verdict, which was denied. The defense then proceeded with the introduction of its evidence.

L. J. Jones, their first witness called, testified that he is the Field Superintendent of Stores for the company; that the "set-up" of the company, or plan of business operation, is to establish self-service stores, where customers go in and wait on themselves and thereby get faster service than they would if required to wait until a clerk could serve them; that under this self-serving plan of operation, the customers go around and select the items they desire and then take them to the checking counter, where they are inspected, checked and paid for.

However, Robert Vaughn's testimony as to this occurrence differed very materially from that of appellee, his testimony being that he had personally waited on plaintiff when she visited this store and made her candy purchase, for which she at the time paid him. He states that after buying it, she went back in the store,

looking around, where she remained for some minutes; that in leaving the store, she come through the exit passway next the checking counter, to which he had "switched over" from the candy counter to assist Mr. Palmer, who was sacking and checking the customer's packages; that "as Mrs. Smith inched by Mr. Palmer, (in going out) she did not offer to show him the contents of her basket, as ninety per cent. of those who take them in do;" that "at Mr. Palmer's signalling 'shopping bag' (announcing such fact), it became my duty to ask Mrs. Smith to let us see into it;" that "as Mrs. Smith passed on down the counter without paying any attention to me, when she had reached the lower end of it (I had moved down with her on the other side), I repeated the question to her, could we see into your basket * * *. At the second request she came to what I would say was an explosive stage;" that "at this particular time it seemed as though she would not comply with my request, and then she seemed to think better of it, and thrust the basket towards me, saying, 'There, look through it good if you think there is anything in it.' " He further testified, "I assisted Mrs. Smith in lowering the basket to the floor. I looked through the top of it casually, and explained as I did this, that this was only a routine function, that where a customer did not offer to show us the bag, it became my duty, as manager, to ask them to let me see into it. Because Mrs. Smith was making so much noise, I wanted to eliminate the incident as quickly as I could. I only examined the top of the package, and I could not tell from that whether there was anything in the bottom or not. As I raised from examining the package, Mrs. Smith picked it up and, still haranguing me in a loud tone of voice, left the store. All through this incident, I treated her very quietly and politely. Never at any time did I touch her person, nor at any time did I grab the basket away from her, as she said."

The testimony of Mr. Palmer, the store's parcel checker, for the most part corroborated that of Mr. Vaughn, though he denied that when Mr. Vaugn took plaintiff's bag, he left the counter and stood by him while he searched plaintiff's bag.

Dr. Spears, called as an expert, testified for defendants that he had recently examined the plaintiff and found, as he was also told by plaintiff, that she had no physical disability from her experience at the store,

where she told him she had been accused of taking candy or something and that her nervous system had been very much shocked by it; that he found "her general examination was practically negative, except that she has high blood pressure and general hardening of the arteries;" that "her blood pressure was a hundred and ninety;" that "she is quite nervous, and rather emotional, and has a good deal of trembling to her fingers and hands, and seems to be rather unsteady * * * on her feet." How much this condition was brought about by her experience at the store, he was unable to say, inasmuch as persons with high blood pressure and hardening of the arteries usually have the symptoms she presents.

At the conclusion of the defendants' evidence, motion for a peremptory instruction was renewed and again refused, when the jury, after being instructed by the court, returned separate verdicts, by which they found both compensatory and punitive damages for plaintiff, as stated supra.

We will now, having stated at some length both the pleadings and facts in proof before us, turn our attention to a discussion and disposition of the several grounds assigned by appellants for reversal of the judgment.

First, appellants attack, as prejudicially erroneous, the court's overruling of their motion that plaintiff be required to make her petition more specific and to separately paragraph the causes of action, if more than one is therein alleged.

This motion, appellants state, was made pursuant to the provisions of Sections 113 and 134, Civil Code of Practice, under which they were entitled to have each cause of action alleged clearly and definitely stated in the petition and also to have each cause distinctly stated in a separate paragraph.

Section 113, sub-section 3, Civil Code of Practice, provides that if there be more than one cause of action alleged in the petition, each must be distinctly stated in a separate, numbered paragraph.

Construing this code provision, we said in City of Princeton v. Baker et al., 237 Ky. 325, 35 S. W. (2d) 524, 528, that:

"Where a petition contains several paragraphs

that relate to a single cause of action, and they are not inconsistent, there is no need for paragraphing. Thus in a negligence case, the cause of action is the injury, and it may be predicated upon as many acts of negligence as the plaintiff may conceive co-operated to bring about the result.'' (See supporting cases therein cited.)

Also Section 134, Civil Code of Practice, cited and relied on by appellants, provides that:

"If the allegations of a pleading be so indefinite or uncertain that the precise nature of the claim or defense is not apparent, the court may require the pleading to be made definite and certain by amendment. The court must, in every stage of an action, disregard any error or defect in the proceedings, which does not affect the substantial rights of the adverse party; and no judgment shall be reversed or affected by reason of such error or defect."

In the editorial note (1) to this section, it is stated that it was intended to "liberalize rules of pleading and to authorize trial courts to permit errors or omissions in pleadings to be corrected wherein it is necessary to do so in furtherance of justice.'' Chesapeake & O. Railway Company v. Conley, 136 Ky. 601, 124 S. W. 861; Louisville & Nashville Railroad Company v. Pointer's Adm'r, 113 Ky. 952, 69 S. W. 1108, 24 Ky. Law Rep. 772.

The appellant Vaughn, having personal information, by reason of his participation in bringing about this alleged false imprisonment of plaintiff, clearly is not in position to contend that under such circumstances he was not definitely advised as to what was the certain cause of action stated in the petition, where it alleged that he, the defendant, Vaughn, had "suddenly grabbed plaintiff and laid hold upon her hands, arms and body * * * and imputed to her that she had stolen certain articles from said store and thereupon * * * unlawfully, and against her will and consent, took her into custody and detained her and deprived her of her right of freedom and locomotion and publicly searched her and her shopping bag,'' wherein he found nothing except what had been bought and paid for, when he released her.

The court, as stated supra, was of the opinion that these allegations of the petition were not inconsistent statements of more than one cause of action, but to-

gether stated only the one cause of action, viz., plaintiff's false detention; and that the matters alleged other than false imprisonment were to be considered but matters of aggravation or as serving to state the circumstances and humiliating manner in which the one alleged offense of false imprisonment was committed. It is our conclusion that the court did not err in so construing the petition and in overruling defendants' motion.

The next error assigned is that the court erred in failing to give a peremptory instruction in favor of appellants at the conclusion of appellee's case and of the entire case, because the proof was insufficient to show a detention and because there was a fatal variance between the pleadings and proof.

Appellants' further contention is that the proof failed to sustain plaintiff's claim of detention and, so failing, that there was a variance between the pleading of false imprisonment and proof showing not detention but an assault and battery committed on plaintiff.

It is sufficient to say, in answer to this contention, that while the evidence was conflicting upon the point of defendant Vaughn's grabbing appellee's wrist and shopping bag as she was passing the checking counter, there was ample evidence furnished by the testimony of appellee and her witness, Mrs. Hoppenjohn, to the effect, as alleged in plaintiff's petition, that the appellant Vaughn did lay hold of her or grabbed her wrist and momentarily held her after she passed the checking counter, without presenting her bag for the checker's inspection, and at the same time grabbed her bag and searched it.

While Vaughn denied that such was his treatment of the appellee, or that he had detained her against her will, such conflict in the testimony only raised an issue of fact, when it became the jury's duty to determine which of the two conflicting versions of the occurrence they would believe. Such being the situation, the trial court properly denied defendants' motion for a peremptory instruction, recognizing that it was not authorized to take the case from the jury merely because the evidence for the defendants may have to him appeared stronger than that for plaintiff, the weight of the evidence being for the jury. Hunsaker v. Ashland Coal & Iron Ry. Co., 181 Ky. 598, 205 S. W. 612; Williams v. L. & N. R. Co., 183 Ky. 602, 210 S. W. 172.

Further, we do not concur with the contention of appellants that a variance resulted or that a different or further separate cause of action was asserted in the petition by its allegations that the defendant Vaughn had laid hold of the hand, arm and body of appellant when grabbing her and her bag and detaining her against her will while he publicly searched it before the other customers.

No claim was made in the petition to damages for any physical injury or that such injury resulted from the alleged act of assault. Such allegation of assault and battery, committed in connection with the alleged false imprisonment of plaintiff, may be considered as only an "aggravating fact" or circumstance attending the defendants' commission of the one cause of action alleged of false imprisonment. The offense of assault and battery may be, it is well settled, treated as being in its nature a form of and akin to the offense of false imprisonment and is embraced therein, or, as asserted by the lower court, is but an aggravating circumstance of or one attendant on the commission of false imprisonment and not to be treated as a separate cause of action, distinct and variant from that alleged of false imprisonment. Therefore it did not constitute a variance between the pleadings and proof; the rule as to this being, as stated in 22 Amer. Jur., section 136, p. 440, that a "false imprisonment almost always constitutes or includes a common-law assault, and may be prosecuted as such or as a distinct and separate offense under the common law."

For the reasons stated supra, we further conclude that the court's ruling, in refusing to grant appellants' motion for a continuance at the close of appellee's case, was also not improper.

Appellants, by their next objection, contend that Vaughn's actions, in examining appellee's shopping bag, were not unlawful, if done in a reasonable manner and that no recovery of damages was allowable against appellants on account of such actions.

It is sufficient answer to this that had Vaughn's actions complained of by plaintiff been such in their character as claimed by appellants, or done in the reasonable manner Vaughn testifies they were done, appellants' contention that no recovery was allowable therefor would be meritorious. But it here appears that ap-

pellants' testimony as to Vaughn's actions upon this occasion was not believed by the jury and that, in the exercise of its function to determine the weight and credibility of the testimony heard, it accepted as true plaintiff's account given of the facts and circumstances under which her false imprisonment occurred.

Appellants contend that by reason of their operating a self-service store, there is presented an entirely different situation from that presented in an ordinary store; that the customer, under such plan of operation, having free access to all the merchandise in the store, when not attended by an employee, is required and becomes obligated to take the merchandise he selects to the checking counter, where it is inspected by a clerk, its price computed, wrapped and paid for; that until this is done, the merchandise remains the property of the store and no sale of it has been made and that, until it is inspected and paid for, the owner of the property or the storekeeper has the right to use reasonable force to prevent his property from being carried away without payment made for it.

It may be conceded that where a storekeeper sees and knows that a customer is taking and wrongfully carrying away merchandise from his store, he has the right to accost the culprit and prevent the attempted "shoplifting" or larceny of his goods. However, though conceding such legal right of the storekeeper to so guard and protect his property, the instant case presents a very different situation. Here the appellants contend that they have become vested with a new and special right to apprehend and detain a customer only suspected of "shoplifting" or of attempting to take away the store's goods without paying therefor, by reason of a change in the manner of operating their business or by substituting self-service for clerk service. They insist that by reason of the character of their "business setup," they have made certain rules and regulations, which are prominently displayed on signs about the store, and that same are effective to so change the long-established legal rules, regulating and controlling the personal and correlative rights of merchant and customer, as to vest the merchant with the new right, created by his "business setup," to apprehend and detain a customer and inspect his parcels and packages upon the mere suspicion of his "shoplifting," based only upon his failure to heed or comply with some rule or regula-

tion of the self-serving store requiring him to present for checking the merchandise he is carrying, regardless of whether it was elsewhere purchased or paid for when purchased.

We do not regard this contention as tenable or that the well-settled legal rules, serving to protect the individual against wrongful detention, may be so breached or amended by privately made business rules, even though deemed appropriate and needful for the successful conduct of the business.

Here the evidence shows that appellee, at the time she testifies she was taken hold of and wrongfully detained by the defendant Vaughn against her will, until he had made investigation of her shopping bag and satisfied himself that she was committing no illegal act, was not attempting to take from the store any article of merchandise which did not belong to her or for which she had not paid and she had the unqualified right to leave the premises without restraint. Further, Vaughn knew that he himself had just served her when she bought the candy and that she had paid him for it and he did not claim that he saw her select or take any other article of merchandise, nor did he have any reasonable grounds for suspecting her of attempting to wrongfully carry away the store's property.

While not questioning appellant Vaughn's right to ask appellee, as she was passing out of the store, to allow him to inspect the contents of her shopping bag, in keeping with the appellant company's claimed uniform practice in such case, the jury did not believe under the evidence that he had approached or treated the appellee in the gentle and reasonable manner he testified characterized his conduct and behavior toward her upon this occasion. Even so, it would constitute no defense to plaintiff's action for false imprisonment that defendant Vaughn, when wrongfully detaining her, was acting (as store manager) under the rules and directions of his employer, nor can such fact serve to extend to the employee the right to violate the legal right of appellee, protecting her against wrongful imprisonment and detention by defendant.

Therefore, under the evidence such right having been violated, the defendants are to be charged with anticipating the natural consequences of their wrongful act, and same having been shown, according to the evi-

dence, to have resulted in appellee's mortification and resulting mental and nervous suffering, the evidence was properly submitted to the jury for their determination of the amount of the damage suffered as the result of her false arrest.

To constitute the injury of false imprisonment, there are two points requisite: (1) The detention of the person, and (2) the unlawfulness of such detention. Newell on Malicious Prosecution, 56; Harper v. Howton, 194 Ky. 840, 241 S. W. 329.

Any deprivation of the liberty of plaintiff by defendant, or any detention of him for however short a time by defendant without the plaintiff's consent and against his will, whether it was by actual violence, threats or otherwise, constitutes an arrest. Miller v. Ashcraft, 98 Ky. 314, 32 S. W. 1085, 17 Ky. Law Rep. 894.

Further, the rule is that in order to constitute a case of false imprisonment, it is essential that there be some direct restraint present. Any exercise of force, by which in fact the other person is deprived of his liberty and compelled to remain where he does not wish to remain or to go where he does not wish to go, is an imprisonment. Johnson v. Norfolk & W. Va. R. Co., 82 W. Va. 692, 97 S. E. 189, 6 A. L. R. 1469. Or, as the offense is defined in Great Atlantic & Pacific Tea Co. v. Billups, 253 Ky. 126, 69 S. W. (2d) 5, "any deprivation of liberty of one person by another or detention for however short a time without such person's consent and against his will, whether by actual violence, threats, or otherwise, constitutes 'arrest,'" or false imprisonment. American Law Institute's Restatement of the Law of Tort, Vol. 1, Section 35, p. 66; 22 Am. Jur., Section 9, p. 359; Sternberg v. Hogg, 254 Ky. 761, 72 S. W. (2d) 421. Also see J. J. Newberry Co. v. Judd, 259 Ky. 309, 82 S. W. (2d) 359.

Clearly the wrongful detention of appellee by the appellant, as here is alleged, contained all the essential elements and factors of the offense of false imprisonment as above defined.

Appellants' next objection is that plaintiff's claim being for mental disturbance only, without physical injury, no recovery was allowable and that the court erred in overruling appellants' demurrer to the petition and in giving an instruction authorizing recovery therefor.

In answer to this claim, the rule is otherwise and thus announced in section 129, page 436, 22 Am. Jur.:

"In an action for false imprisonment, the wrongdoer is liable for all the direct and proximate results of the imprisonment. The general rule in personal tort actions that the plaintiff is entitled to recover such a sum as will be a fair and just compensation for the injuries sustained and that the recoverable damages are limited to such compensation, in the absence of circumstances justifying an award of exemplary or punitive damages, applies in actions for false imprisonment. What amounts to a fair and just compensation for injuries is a question for the jury."

Further it is stated in section 130, page 437, of the same text, that:

"In accordance with the general rule in actions for personal injuries, mental suffering, including fright, shame, and mortification from the indignity and disgrace, consequent upon an illegal detention is usually considered an injury for which compensation may be made."

Such rule is also declared in the case of Ross v. Kohler, 163 Ky. 583, 174 S. W. 36, 41 L. R. A. 1915D, 621, as follows:

"The rule applying in such cases is that the successful plaintiff is entitled to compensation for all the natural and probative consequences of the wrong, including injury to the feelings from humiliation, indignity, and disgrace, and injury to the person, and physical suffering, interruption of business, and loss of time from the restraint."

See like statement made of this general rule in section 176, page 593, 15 Am. Jur.

Appellants next complain that even if compensatory damages for mental suffering are recoverable, the evidence here as to the extent and gravity of appellee's mental suffering was not sufficient to support the verdict of $2,000 awarded her, but that it is so large an amount as to impel the belief that it was the result of passion and prejudice. Chambers v. Hawkins, 233 Ky. 211, 25 S. W. (2d) 363.

The general rule is that the amount of damages to

be awarded is one for the jury and that its award made will not be disturbed on the ground of excessiveness, unless so flagrantly large as at first blush to evince passion, partiality or corruption. 15 Am. Jur., Section 128, p. 434; Ross v. Kohler, supra.

As to this, while the amount of compensatory damages awarded is large, it yet appears by the evidence that appellee's suffering and mental shock has been severe and its duration is uncertain, as it can not be ascertained whether it will or will not continue for the rest of appellee's life. Taking such matters into consideration and the jury having been advised, by the instruction given it, to award her such sum in damages as it might believe from the evidence would compensate her for her mental pain and suffering and for any shame, humiliation or motrification resulting from the incident, we are not inclined to disturb its finding on this point or to say that the amount of compensatory damages awarded was such as to lead us to conclude that its giving was the result of passion and prejudice.

The next and final objection is that no award of punitive damages, as was here made, was permissible.

After a careful consideration of the evidence here before us, as to the circumstances under which the alleged unlawful detention of plaintiff was committed, we are unable to see that the same was motivated by any malice or wantonness, but was merely performed by appellant Vaughn as one of his duties as manager of the store, under his employer's rule that the parcels of each customer must be inspected and checked before leaving the store, so that each item purchased would be paid for.

Exemplary or punitive damages are generally defined as those given in enhancement of compensatory damages on account of the wanton, malicious or reckless character of the acts complained of. They go beyond actual damages suffered and are allowed where the tort is aggravated by evil motive, actual malice or deliberate violence. They are given not by way of a public punishment, but by way of private damages for the wrongful act, as a tort not a crime. Scott v. Donald, 165 U. S. 58, 17 S. Ct. 265, 41 L. Ed. 632; 15 Am. Jur., Sections 265 and 266; Chiles v. Drake, 59 Ky. 146, 2 Metc. 146, 74 Am. Dec. 406.

Their award need bear no relation to the compensatory damages allowed, but only to the injury and its

cause complained of. Louisville & N. R. Co. v. Ritchel, 148 Ky. 701, 147 S. W. 411, 41 L. R. A., N. S., 958, Ann. Cas. 1913E, 517.

It is therefore our conclusion that the court erred in giving a separate instruction to the jury, permitting it to find for the plaintiff punitive damages upon this evidence. Therefore, we consider that the instruction given in such respect was erroneous, for which reason the verdict returned for punitive damages must be set aside and the judgment entered thereon must be and is to such extent reversed.

The rule is well settled by repeated holdings of this court that where the jury, under an instruction, has separated compensatory from punitive damages in its verdict (as was here the case), the court of appeals, when circumstances justify the step, will affirm the judgment as to compensatory damages and reverse same as to punitive damages. The learned trial court here instructed the jury that if it found for the plaintiff and awarded her both compensatory and punitive damages, it should separate its award, stating what amount was compensatory and what was punitive. The jury, under such direction, awarded appellee compensatory damages of $2,000 and punitive damages of $500. Prudential Ins. Co. of America v. Alsobrook, 266 Ky. 442, 99 S. W. (2d) 210; Garnett v. Farmers' Nat. Bank of Cynthiana, 23 S. W. 866, 15 Ky. Law Rep. 643; Chesapeake & O. Ry. Co. v. Judd's Adm'x, 106 Ky. 364, 50 S. W. 539, 20 Ky. Law Rep. 1978; Louisville & N. R. Co. v. Scott, 141 Ky. 538, 133 S. W. 800, 34 L. R. A., N. S., 206, Ann. Cas. 1912c, 547.

The judgment, therefore, is reversed as to the punitive damages awarded and the cause remanded with directions to enter judgment for compensatory damages in the sum of $2,000.