**WAL–MART STORES, INC. and Rick Jackson, Appellants,**

v.

**Janice MITCHELL, as Mother and Next Friend of Kevin Blackburn, Appellees.**

**No. 92–CA–003077–MR.**

Court of Appeals of Kentucky.

May 27, 1994.

Clifford B. Latta, Latta & Brown, Prestonsburg, for appellants.

Jerry A. Patton, Prestonsburg, for appellees.

Before: HUDDLESTON, JOHNSON and McDONALD, JJ.

HUDDLESTON, Judge.

Wal–Mart Stores, Inc. and Rick Jackson, an employee in its Prestonburg store, seek review of a Floyd Circuit Court judgment, based upon a jury verdict, which awarded Kevin Blackburn $30,000.00 in compensatory damages for false imprisonment. We find no error and affirm.

On August 6, 1990, Blackburn, then fourteen years of age, entered the Wal–Mart Store in Prestonburg to purchase a set of three arrows for his archery ensemble. After paying for the arrows and exiting the

store, Blackburn was approached in the parking lot by assistant managers Rick Jackson and Al Landers. Jackson and Landers identified themselves and asked the lad to accompany them into the store for questioning. Jackson had been watching Blackburn at the hunting and camping modular and thought he saw Blackburn hide a "long narrow object" in his pants before purchasing the arrows.

At trial, Blackburn claimed that while they were in the parking lot Jackson grabbed him by the arm and tried to put his hand in Blackburn's pants, apparently to extricate the object he thought the boy had stolen. Blackburn also testified that both Jackson and Landers "manhandled" him by grabbing his arms and taking him, against his will, to a training room in the rear of the store. Once there, Jackson closed and locked the door, and interrogated and intimidated him for approximately thirty minutes. During this time, Blackburn continued, Jackson several times ordered him to pull down his pants. Jackson also purportedly tried to persuade Blackburn to sign a statement admitting his guilt to the alleged theft, although Jackson never called the police or recovered any stolen merchandise. According to Blackburn, Jackson released him only after the boy began to cry and complain of feeling sick.

Not unexpectedly, Jackson denied virtually all of Blackburn's accusations. While Jackson did admit that he and Landers confronted Blackburn in the parking lot, he insisted that he never attempted to put his hand in Blackburn's pants. Jackson also maintained that neither he nor Landers grabbed Blackburn by the arms or took Blackburn, against his will, back into the store; he simply patted Blackburn on the arm and politely asked him to return to the store for questioning, and Blackburn followed. The "interrogation," Jackson testified, lasted no more than five minutes and was conducted with the door open. At no time did he ask Blackburn to pull down his pants or sign anything; he merely asked Blackburn to hand over the goods. Jackson released Blackburn after becoming concerned about the young man's emotional well-being.

After leaving the store, Blackburn upset and crying, explained to his mother, Janice Mitchell, what had happened. An angry Mitchell entered the store in search of Jackson. According to Mitchell, Jackson explained that he thought her son had stolen something, but that he must have "ditched it" before being detained. Jackson apologized profusely.

Sometime thereafter, Mitchell, acting on behalf of her son, brought an action against Wal–Mart and Jackson for false imprisonment. The case went to trial and, after deliberating for but fifteen minutes, a unanimous jury found for Blackburn. This appeal followed.

■ To sustain a recovery for the tort of false imprisonment, a complainant must establish that he was detained and that the detention was unlawful. In *Great Atlantic & Pacific Tea Co. v. Smith*, 281 Ky. 583, 136 S.W.2d 759, 767 (1939), the Court said:

> Any exercise of force, by which in fact the other person is deprived of his liberty and compelled to remain where he does not wish to remain or to go where he does not wish to go, is an imprisonment. (Citations omitted.) Or, as the offense is defined in *Great Atlantic & Pacific Tea Co. v. Billups*, 253 Ky. 126, 69 S.W.2d 5, "any deprivation of liberty of one person by another or detention for however short a time without such person's consent and against his will, whether by actual violence, threats, or otherwise, constitutes 'arrest' ", or false imprisonment. (Citations omitted.)

■ Appellants' position is that the judgment should be vacated because Blackburn's detention as a suspected shoplifter, although it may have once have been considered false imprisonment, was lawful under Ky.Rev.Stat. (KRS) 433.236, Kentucky's "shoplifting statute." KRS 433.236 was enacted in 1958 to give merchants some assistance in dealing with shoplifters by providing a limited defense to a charge of false imprisonment. *SuperX Drugs of Ky., Inc. v. Rice*, Ky.App., 554 S.W.2d 903, 905 (1977). The statute provides, in pertinent part, that:

> (1) A ... merchant's employe who has probable cause for believing that goods

held for sale by the merchant have been unlawfully taken by a person may take the person into custody and detain him in a reasonable manner for a reasonable length of time, on the premises of the mercantile establishment or off the premises of the mercantile establishment, if the persons enumerated in this section are in fresh pursuit, for any or all of the following purposes:

\* \* \* \* \* \*

(c) To make reasonable inquiry as to whether such person has in his possession unpurchased merchandise, and to make reasonable investigation of the ownership of such merchandise;

(d) To recover or attempt to recover goods taken from the mercantile establishment by such person. . . .

Ultimately, the question of whether a detention was lawful is one of fact to be resolved by a jury under proper instructions from the trial court. As in all cases involving questions of fact, the weight to be given to conflicting evidence and the credibility to be afforded each witness remains within the province of the jury. It is entitled to accept the plaintiff's version of the incident and reject the defendant's version or vice versa. On appeal, we view the evidence in the light most favorable to the prevailing party. If viewed in that light it supports the judgment, we must affirm.

■ Here, there is ample evidence to support the jury's verdict. While KRS 433.-236(1) authorizes a merchant's security agents or employees to detain an individual suspected of shoplifting, this statute does not provide the merchant or its employees with a license to manhandle or browbeat a child in an attempt to discover if he has unlawfully taken merchandise from the premises. The jury was entitled to—and obviously did—believe Blackburn. The appellants advance no valid reason why we should reject its verdict.

■ Wal–Mart and Jackson also argue that the jury's $30,000.00 compensatory damage award is excessive and appears to have been given under the influence of passion and prejudice. They assert that Blackburn is only entitled to nominal damages for the minimal suffering and embarrassment he endured during the time he was detained.

In *Smith, supra,* 136 S.W.2d at 768, this state's highest court said that:

The general rule is that the amount of damages to be awarded [for false imprisonment] is one for the jury and that its award made will not be disturbed on the ground of excessiveness, unless so flagrantly large as at first blush to evince passion, partiality or corruption.

In *Ross v. Kohler,* 163 Ky. 583, 174 S.W. 36, 41 (1915), the Court concluded that "the successful plaintiff is entitled to compensation for all the natural and probable consequences of the wrong, including injury to the feelings from humiliation, indignity, and disgrace, and injury to the person, and physical suffering . . . and loss of time from the restraint." The Court went on to say that:

[N]o sum which is not, per se, evidence of prejudice or corruption is excessive for such indignities and suffering, where deprivation of liberty and injury to character result. \* \* \* [I]n such cases the court will not disturb the verdict of a properly instructed jury, on account of the sum of damages allowed being excessive, unless it appears that there is a flagrant abuse of discretion by the jury, or that the jury was actuated by passion or prejudice.

*Id.*

Blackburn testified at trial that as a result of Jackson's actions, there were times he was afraid he was going to be hurt. According to Blackburn, he was humiliated and embarrassed by Jackson because he was "drug around like a thief." During and after the incident, Blackburn says, he felt "pitiful" and "just plum depressed." Blackburn's mother, Janice Mitchell, and Arlene West, a former outpatient therapist at Mountain Comprehensive Care, a mental health counseling agency, testified that for four months following the incident, Blackburn had undergone mental health counselling on a regular basis in an attempt to deal with emotional problems related to it.

Having heard this evidence, the jury awarded Blackburn a sum of money it saw as

appropriate compensation for injuries to Blackburn's mental and emotional health and his dignity. Because Jackson's conduct, as described by Blackburn, was unreasonably intrusive, insulting and humiliating, we are not persuaded that the award was excessive. Much larger awards have been affirmed in other states. See generally, Jay M. Zitter, Annotation, *Excessiveness or Inadequacy of Compensatory Damages for False Imprisonment or Arrest*, 48 A.L.R. 4th 165, § 16 (1986). While each case of false imprisonment necessarily turns on its own facts, the common thread running through the reported cases is that a jury will not be faulted when it makes a substantial award to one who has been wrongly deprived of his liberty and subjected to treatment which unnecessarily embarrasses and humiliates him. The jury's award in this case is well within the range of awards approved in similar cases. It will not be disturbed on appeal.

The judgment is affirmed.

All concur.