# Jefferson Dry Goods Co. et al. v. Stoess.

February 21, 1947.

B. H. Farnsley, Judge.

Curtis & Curtis, Joseph J. Hancock and Henry J. Tilford for appellants.

Joseph M. Hayse and Nellie S. Hayse for appellee.

OPINION OF THE COURT BY JUDGE LATIMER—Reversing in part, affirming in part.

Appellee, Bessie Lawson Stoess, brought this action against the Jefferson Dry Goods Company, and H. E. Sones, its Assistant Manager.

Appellee's cause of action for false imprisonment under her original petition, and for malicious prosecution under amended petition, were tried together. The jury returned a verdict in favor of plaintiff in the sum of $5,048.40, and judgment was entered accordingly. The defendants appeal.

Upon refusal of the court below to direct that a capias ad satisfaciendum issue, the appellee has cross-appealed.

Late on the afternoon of December 7, 1943, and before closing hours, the appellee, Bessie Lawson Stoess, was in the store of the Jefferson Dry Goods Company for the purpose, as she says, of "shopping around" and passing away some time until the hour she was to meet her daughters. She stated she purchased a pair of hose while in the store; that this pair of hose was placed in a paper bag by the saleslady and delivered to her; that she had a sack of candy which she had purchased from a five and ten cent store, and that the cellophane wrapper on the candy had broken; that she removed the hose from the sack and placed them in her coat pocket in order to put the loose candy from the broken cellophane wrapper in the sack which had contained the hose. It appears that this transfer was taking place as the appellee was leaving the store, or just prior thereto. Whereupon, the appellant, Sones, immediately grabbed her by the arm and took her to the balcony of the store accusing her of having stolen the hose. She was questioned by Mr. Beck, the Manager, who, she claims, talked to her rather "fussy;" took her purse, looked into it and commented about her having no money; that a lady employee or detective pushed her back into a chair and made ugly remarks to her. Beck, the Manager, then called the City Police. In about 15 or 20 minutes the police came, placed her in a police patrol, and took her to the city detective headquarters, after which a warrant was issued, and appellee was arrested.

Examining trial was held in the police court on December 28, 1943, and the appellee was held over to the grand jury. It was developed in the examining trial that Mrs. Stoess, upon her returning home after making bond on the night she was first apprehended, found in the bottom of the sack from which the hose had been transferred to her pocket, a sales ticket, bearing the same date as that of the alleged purchase, showing the sale of an 0.81c pair of hose, identified by number as the sales ticket issued by the saleslady who Mrs. Stoess claimed had sold her the hose.

On the 17th of January, 1944, after hearing the matter, the grand jury refused to indict.

On February 17, 1944, appellee instituted this action for false arrest.

On March 8, 1944, the charge was resubmitted to the grand jury at the instance of the appellants, and an indictment was returned.

On January 8, 1945, upon trial under that indictment, the jury returned a verdict of not guilty.

On February 2, 1945, appellee filed amended petition alleging malicious prosecution.

Upon the trial of the action, the jury returned the following verdict:

"We the Jury find for the plaintiff.

Five thousand forty eight dollars, forty cents."
Item # 1 $3000.00 false arrest
  "  # 5     48.40 court cost
  "  # 5  2000.00 Punitive Damage.

————

$5048.40

Appellants insist first that the court erred in overruling appellants' motion for a directed verdict at the conclusion of appellee's evidence and at the conclusion of all the testimony. They base this contention upon the ground that the proprietor of a store has the right to detain for a reasonable period of time, pending investigation, one who the owner has probable cause to believe has stolen and is in possession of his property, and that the owner of merchandise or property under the law has

the inherent right to protect such property by reasonably restraining one who seeks to interfere with or injure such property. They insist that the facts and circumstances justified the detention of Mrs. Stoess for the purpose of investigation, and that such detention was not unreasonable.

In support of justification and probable cause appellants rely on the following testimony: That when Mrs. Stoess came into the store she was approached by a saleslady who inquired if she wished to be waited on, and that she replied she was waiting for her sister; that Mrs. Stoess was about the hosiery counter and that numerous times she laid her purse down on top of the hosiery on the counter and then would walk away, come back, pick up her purse and hold it a while. The attention of the Manager, Mr. Beck, was called to the actions of Mrs. Stoess by Mrs. Hawkins, a saleslady. Mr. Beck testified that he watched Mrs. Stoess from the balcony for about 10 minutes, then went to the main floor where he watched her for a few minutes more; that he then asked her if she had been waited on, and received the same reply that she had made to the saleslady; that he saw her with her purse lying on top of the hose; saw her reach down underneath the purse, take hold of the hose, lift her purse with the hose still underneath it, and then with her left hand put the unwrapped hose in the left outside pocket of her coat; that she then left the store and Mr. Sones, the Assistant Manager, went outside and requested her to go back into the store and up to the Manager's office with him; that she had the unwrapped hose in her outside coat pocket where 4 witnesses had seen her put them, all of whom said she did not pay for them; that she later admitted that ''the old devil must have gotten in her'' and that she had not paid for them; that under questioning by the officers she first said she had a sales slip, or ticket, and that she had purchased the hose, but afterwards offered several times to pay for the hose if they would let her go home.

All of the above testimony was denied emphatically by Mrs. Stoess.

This brings us then to a consideration of the law. In support of their position appellants cite both texts and decisions. A proper consideration of the question

requires that we keep in mind the elements that enter into false arrest or false imprisonment. In the first place, there must have been a detention of the person, and in the second place that detention must have been unlawful. Taken together, they mean an actual restraint and unlawful detention, or deprivation of one's liberty. There is no dispute as to the first element above. The appellant, Sones, testified as follows:

"I picked her up on the sidewalk. I caught hold of her arm and said: 'The manager would like to see you,' and I brought her back in, took her down to the main floor, and Mr. Beck met us at the foot of the steps coming down from the balcony, and he and I both took her upstairs."

The second element presents the serious question since we have a person restrained and detained by a private person. Section 37 of the Criminal Code of Practice of Kentucky provides when a private person may make an arrest. It reads as follows:

"A private person may make an arrest, when he has reasonable grounds for believing that the person arrested has committed a felony."

There is no contention here that a felony was being committed. Consequently, appellants cannot invoke the above section of the Criminal Code of Practice. There is no provision in this State for a private person to make an arrest for a misdemeanor as he may do for felony under the section above.

Appellants cite Am. Jur., Vol. 22, page 408, Section 78, in support of their right to detain even though the injury about to be inflicted constituted only a misdemeanor. This statement from Am. Jur. appears to have been taken from the case of Collyer v. S. H. Kress Co., 5 Cal. 2d 175, 54 P. 2d 20, also relied on by the appellants, wherein it was held that an owner of property, in exercise of his inherent right to protect it, may restrain anyone who seeks to interfere with or injure it, even though the case involves only a misdemeanor.

Appellants cite further in support of their contention Great Atlantic & Pacific Tea Co. v. Billups, 253 Ky. 126, 69 S. W. 2d 5, and F. S. Marshall Co. v. Brashear, 238 Ky. 157, 37 S. W. 2d 15. It will be noted that there

was no arrest in either of the above cases, and the question as to whether or not probable cause was a defense was not considered.

The rule as found in the Collyer case above is not the law in Kentucky. Our position is stated in the case of Great Atlantic & Pacific Tea Co. v. Smith, 281 Ky. 583, 136 S. W. 2d 759, 766, in which it is said:

"We do not regard this contention as tenable or that the well-settled legal rules, serving to protect the individual against wrongful detention, may be so breached or amended by privately made business rules, even though deemed appropriate and needful for the successful conduct of the business. * * *

"While not questioning appellant Vaughn's right to ask appellee, as she was passing out of the store, to allow him to inspect the contents of her shopping bag, in keeping with the appellant company's claimed uniform practice in such case, the jury did not believe under the evidence that he had approached or treated the appellee in the gentle and reasonable manner he testified characterized his conduct and behavior toward her upon this occasion. Even so, it would constitute no defense to plaintiff's action for false imprisonment that defendant Vaughn, when wrongfully detaining her, was acting (as store manager) under the rules and directions of his employer, nor can such fact serve to extend to the employee the right to violate the legal right of appellee, protecting her against wrongful imprisonment and detention by defendant."

We must, therefore, conclude that in an attempted arrest by private persons where only a misdemeanor is involved, probable cause is no justification. Hence, there was an unlawful detention of Mrs. Stoess.

Appellants insist further that the court erred in refusing to discharge the jury following appellee's feigned or actual fainting during the trial. It appears that during the trial appellee fainted. She was taken from the court room into an adjoining hall. The court declared a recess and, without admonition, the jury was permitted to separate. Appellants insist that it is probable that this actual or feigned distress of appellee aroused sufficient sympathy to cause the jury to find in her favor.

There appears to have been some complaint that one of the jurors made some remark about getting some water for the appellee. The record discloses that the court told counsel for appellants that it would call the questioned juror into chambers and ask her what happened. Counsel for appellants declined to have the court do so. The record further shows that the Deputy Sheriff in charge of the court was present at the time the juror spoke to the parties who were assisting the appellee, and no request was made by appellants to have the court inquire of the Deputy Sheriff what had happened. This trial lasted for four days. The occurrence complained of happened on the third day of the trial. The record discloses that Mrs. Stoess was a highly nervous woman, and that she had undergone two major operations. Numerous witnesses from her home at Crestwood testified as to her fine reputation. Under the facts of this case we would not be justified in concluding that this was a feigned fainting. We think the court properly overruled the motion to discharge the jury.

This leads us, then, to the matter of punitive damages. It is insisted by appellants that the jury found for them on the issue of malicious prosecution, and that the failure to find for appellee on that issue indicates the jury believed there was probable cause for the arrest.

Appellee insists that the jury found for the plaintiff on that issue in the sum of $48.40, being the cost of appellee's defending herself from the charge.

It is well established in numerous decisions that in order to justify an instruction on punitive damages there must be a wanton disregard of the rights of others. There must be willfulness, wantonness, and malice. We cannot under this record conclude that such existed. Obviously, the appellants believed themselves justified in the procedure they took, and certainly the question of probable cause becomes highly important in determining whether or not there was maliciousness and wantonness.

In 22 Am. Jur., Generally, Section 132, we find the following:

"Punitive damages will never be allowed where the false imprisonment was brought about in good faith,

without malice in fact or in law, and where there is no element of wantonness or oppression.''

See also Cincinnati, N. O. & T. P. R. Co. v. Cundiff, 166 Ky. 594, 179 S. W. 615, Ann. Cas. 1916C, 513.

After the plaintiff was bound over to the grand jury, and subsequently indicted, even though the indictment was first refused, it cannot be seriously contended there was lack of probable cause or indication of the presence of any of the elements necessary to justify an instruction on punitive damages. The jury did not attach a great deal of importance to the cause of malicious prosecution, as evidenced by the insignificance of the sum awarded on that cause, which was $48.40 for court costs in defense. We conclude, therefore, that the court erred in giving an instruction on punitive damages. Thus finding, it is necessary to reverse on that ground. However, this does not mean that the case on its whole must be reversed. We have held that where under instructions the verdict is separated into compensatory damages and punitive damages, there may be an affirmance as to compensatory damages, and a reversal as to punitive damages. In Great Atlantic & Pacific Tea Co. v. Smith, above cited, it was held:

''The rule is well settled by repeated holdings of this court that where the jury, under an instruction, has separated compensatory from punitive damages in its verdict (as was here the case), the court of appeals, when circumstances justify the step, will affirm the judgment as to compensatory damages and reverse same as to punitive damages. The learned trial court here instructed the jury that if it found for the plaintiff and awarded her both compensatory and punitive damages, it should separate its award, stating what amount was compensatory and what was punitive. The jury, under such direction, awarded appellee compensatory damages of $2,000 and punitive damages of $500. Prudential Ins. Co. of America v. Alsobrook, 266 Ky. 442, 99 S. W. 2d 210; Garnett v. Farmers' Nat. Bank of Cynthiana, 23 S. W. 866, 15 Ky. Law Rep. 643; Chesapeake & O. Ry. Co. v. Judd's Adm'x, 106 Ky. 364, 50 S. W. 539, 20 Ky. Law Rep. 1978; Louisville & N. R. Co. v. Scott, 141 Ky. 538, 133 S. W. 800, 34 L. R. A., N. S., 206, Ann. Cas. 1912C, 547.''

See also Davidson et al. v. Manning, 168 Ky. 288, 181 S. W. 1111 and Ashland Dry Goods Co. et al. v. Wages, 302 Ky. 577, 195 S. W. 2d 312.

The matter brought on cross-appeal by appellee is a moot question since the appellant, Jefferson Dry Goods Company, executed supersedeas bond which will provide for payment of the judgment. However, it might be remarked that the court below should have followed the statutes relative to the capias ad satisfaciendum. See also Kennedy v. Brink, 293 Ky. 447, 169 S. W. 2d 292 and Miller v. Howe, 245 Ky. 568, 53 S. W. 2d 938.

Wherefore, the judgment is reversed as to the punitive damages awarded and affirmed as to the remainder, and the cause is remanded with directions to enter judgment accordingly.