CONSOLIDATED SALES COMPANY,
Appellant,

v.

Robbie Kimbrough MALONE, Appellee.

Court of Appeals of Kentucky.

Nov. 26, 1975.

William S. Bowman, Stiles & Miller, Louisville, for appellant.

Wesley P. Adams, Jr., Ogden, Robertson & Marshall, Louisville, for appellee.

PALMORE, Justice.

Consolidated Sales Company appeals from a judgment awarding the appellee, Robbie Kimbrough Malone, $1,000 in compensatory damages and $2500 in punitive damages for false imprisonment allegedly committed against her by its employes.

The instructions directed a verdict for the plaintiff on the issue of liability for compensatory damages and authorized punitive damages if the jury should find from the evidence that the "action and attitude" of Consolidated's employes "indicated a wanton and wilful disregard of the right of others, including the plaintiff," etc.

Consolidated contends that the case should have been submitted to the jury on the issue of probable cause and that the evidence was not sufficient to justify the instruction on punitive damages. It is our opinion that both contentions are well taken, for which reasons the judgment must be reversed.

The statute under which Consolidated seeks to avoid liability is KRS 433.236(1), which provides as follows:

"A peace officer, security agent of a mercantile establishment, merchant or merchant's employe who has probable cause for believing that goods held for sale by the merchant have been unlawfully taken by a person, and that he can recover same by taking the person into custody, may, for the purpose of attempting to effect recovery, take the person into custody and detain him in a reasonable manner for a reasonable length of time."

The incident giving rise to the suit occurred in a retail store operated by Consolidated in Louisville. The plaintiff, Miss Kimbrough (now Malone) had entered the store in the company of her prospective mother-in-law, Magnolia Malone, and the latter's two daughters, one of whom was 13 and the other eight years old. Some time later, as they were preparing to leave, Glenda Routon, a security employe of the Company, summoned a uniformed guard and told Miss Kimbrough that she would have to go with them to the security office, which she did. In the security office Glenda conducted a search of Miss Kimbrough's person but found no stolen merchandise, whereupon Miss Kimbrough was permitted to depart in peace.

■ In testing the procedural effect of the evidence produced in any case it is essential to begin with a determination of which party had the burden of proof on the issue or issues in question. The first issue here is whether Miss Routon had probable cause for taking custody of and detaining Miss Kimbrough. KRS 433.236(1) makes probable cause a justification in the case of suspected shoplifting. Justification of an act that would otherwise be culpable is in the nature of a confession-and-avoidance defense, which ordinarily must be pleaded and proved. Cf. 32 Am.Jur.2d 149, *False Imprisonment,* § 99. The burden of proof is on the plaintiff to show the imprisonment and on the defendant to show justification. Annotation, *False Imprisonment—Shoplifters,* 47 A.L.R.3d 998, 1004 (1973).

In *Steinbergen v. Miller*, 29 K.L.R. 1132, 96 S.W. 1101, 1103 (1906), this court said: "In order to maintain an action for false arrest and imprisonment, or malicious prosecution, the burden is upon plaintiff to show that the defendant acted both maliciously and without probable cause." No doubt, however, in so saying the court had in mind actions sounding essentially in malicious prosecution, involving valid arrests, rather than false imprisonment as such, because at common law probable cause apparently was not a defense against trespass, which was the form of action for unlawful interference with the person. Cf. annotation, *False arrest—Liability—Private person*, 21 A.L.R.2d 643, 647 (1952).

KRS 433.236(1) creates a defense to false imprisonment that did not exist before its enactment. See *Jefferson Dry Goods Co. v. Stoess*, 304 Ky. 73, 199 S.W.2d 994, 997 (1947). The defendant has the burden of pleading and proving it. In this case the defendant did not plead the defense, but its evidence, which had no relevancy to any other purpose, was admitted without objection. The reception of such evidence was tantamount under CR 15.02 to an amendment of the answer to cover an issue "tried by express or implied consent of the parties." Cf. Clay's Kentucky Practice, CR 15.02; Moore's Federal Practice (2d ed.), R 15(b), ¶ 15.13[2] (Vol. 3, pp. 991, 997); *Patton v. Lake,* Ky., 294 S.W.2d 917, 919 (1956); *Carney v. Scott,* Ky., 325 S.W.2d 343, 348 (1959).

The question, then, is whether this defensive evidence was such that it would not have been unreasonable for a jury to find in reliance upon it that the Company's security employe had probable cause to believe that Miss Kimbrough had unlawfully taken some of its merchandise. It is summarized as follows:

Glenda Routon, stationed in a concealed position above the security office, first observed Miss Malone in the baby department and thought she was carrying some pastel-colored items of baby clothing on her arm, but her suspicions were not aroused until she noticed that Miss Kimbrough "went several times" to Mrs. Malone, who was in the shoe department with the two daughters, "and she did that several times . . They would meet and separate, and meet together." During the process, the articles Glenda says she had seen on Miss Kimbrough's arm gradually disappeared, so when Miss Kimbrough made her way toward the store exits Glenda make a quick inspection trip through the shoe department and other areas where Miss Kimbrough had been to see if she had laid the articles down. Not finding them, Glenda went to the area near the check-out counter and accosted Miss Kimbrough, who was waiting by the door while her companions went through a check-out lane.

We are of the opinion that on the basis of Glenda's testimony it would not have been unreasonable for a jury to find that she had probable cause to believe that Miss Kimbrough was engaged in stealing merchandise from the store. The question should have been submitted to the jury under a defensive instruction.

We proceed now to the issue of punitive damages, on which the plaintiff had the burden of proof.

"It is well established in numerous decisions that in order to justify an instruction on punitive damages there must be a wanton disregard of the rights of others. There must be willfulness, wantonness, and malice." *Jefferson Dry Goods Co. v. Stoess,* 304 Ky. 73, 199 S.W.2d 994, 997–998 (1947).

"Exemplary or punitive damages are generally defined as those given in enhancement of compensatory damages on account of the wanton, malicious or reckless character of the acts complained of. They go beyond actual damages suffered and are allowed where the tort is aggravated by evil motive, actual malice or deliberate violence." *Great Atlantic & Pacific Tea Co. v. Smith*, 281 Ky. 583, 136 S.W.2d 759, 768 (1940).

"There must be a showing that the acts were either willful or malicious or that they were performed in such a way as would indicate a gross neglect or disregard for the rights of the person wronged." *Ashland Dry Goods Co. v. Wages*, 302 Ky. 577, 195 S.W.2d 312, 315 (1946).

■ As we understand these statements of principle, punitive damages must be premised on one or both of these two circumstances: (1) the defendant's conduct was malicious, in that he acted in bad faith, and was not motivated by a belief that he had probable cause to detain the plaintiff, or (2) even though he may have acted in good faith, his treatment of the plaintiff was grossly in excess of what the circumstances, as the defendant actually believed them to be, reasonably required.

■ Accepting Miss Kimbrough's testimony as true throughout, there was nothing in the evidence produced in this case to support a reasonable inference that Glenda Routon did not act in good faith or that Miss Kimbrough was treated in a manner not justified by the circumstances as Glenda believed them to be. Miss Kimbrough's account was as follows:

Glenda walked up to Miss Kimbrough, motioned for the uniformed guard, and told him that Miss Kimbrough "was the one." The guard told Miss Kimbrough that she would have to go with him. She remonstrated, but he told her she would have to go anyway. The guard led the way back to (but did not himself enter) a small closet-like office, followed by Miss Kimbrough and then Glenda. A man in plain clothes was sitting in the room. Glenda said, "I have to search you," and Miss Kimbrough threw her pocketbook on the desk. The man in plain clothes searched it and then left the room, leaving only Glenda and Miss Kimbrough. The door remained open, but there was no evidence that anyone outside the room could or did see what was taking place inside. Glenda asked Miss Kimbrough to take off her coat, which she did, and then, after "patting her down" told her to take off her dress. Miss Kimbrough unzipped her dress and let it part-way down, following which, as described by Miss Kimbrough, "she patted me down again, and she stood there, and she said, 'Have to search your bottom too,' so I pulled the bottom of my dress up, and she patted me down again, and she kept staring at me, and I said 'What do you want me to do, take my clothes off?' and she said, 'We have to do that too,' and I pulled my girdle down, and she was helping me do that, and she just stood there and looked at me, and I asked her if she was through, and she says, 'Yes.'" Miss Kimbrough estimated that this process consumed a period of 15 minutes, after which she was permitted to leave.

Assuming (and there was no evidence suggesting otherwise) that Glenda Routon suspected that Miss Kimbrough had concealed some articles of infant-apparel on her person, we see nothing in this account to support a finding that the manner in which Miss Kimbrough was treated and in which the search was conducted was unreasonable.

If in the event of another trial the evidence is substantially the same, the case should be submitted to the jury only on the questions of probable cause and compensatory damages.

The judgment is reversed with directions for a new trial.

CLAYTON, JONES, LUKOWSKY and STEPHENSON, JJ., concurring.

REED, C. J., concurring except on the issue of punitive damages.