SUPERX DRUGS OF KENTUCKY, INC., and Leslie Rowland, Appellants,

v.

Wanda RICE, Appellee.

Court of Appeals of Kentucky.

Aug. 19, 1977.

Grant F. Knuckles, Pineville, William A. Watson, Watson & Watson, Middlesboro, for appellee.

Glenn W. Denham, Denham, Ralston & Nagle, Middlesboro, O. Grant Bruton, Jefferson Davis Stewart, III, Middleton, Reutlinger & Baird, Louisville, for appellants.

W. Terry McBrayer, Greenup, amicus curiae Kentucky Retail Federation, Inc.

Before PARK, REYNOLDS and WILHOIT, JJ.

PARK, Judge.

This appeal arises out of an action for false imprisonment brought by the plaintiff-appellee, Wanda Rice, against the defendants-appellants, SuperX Drugs of Kentucky, Inc., and a clerk in its Middlesboro store, Leslie Rowland. On the first two trials of the case, the juries were unable to agree on a verdict. On the third trial of the case, the jury returned a verdict in favor of Mrs. Rice, awarding her $75,000 as compensatory damages and $75,000 as punitive damages. SuperX and Rowland appeal from the judgment entered on this verdict.

SuperX and Rowland assert that they were entitled to a directed verdict. According to their evidence, Rowland and an independent salesman, Robertson, observed Mrs. Rice place makeup, lipstick and cologne in a Rose's Department Store sack. At the checkout counter, Mrs. Rice paid for certain other items by means of a social security

check. However, according to Rowland and Robertson, Mrs. Rice did not remove the makeup, lipstick and cologne from the Rose's sack or offer to pay for those items. As she was preparing to leave the store, Mrs. Rice was stopped by Rowland who escorted her back to a small room at the rear of the drugstore used as an employee's lounge. When requested, Mrs. Rice emptied the contents of the Rose's sack onto a table, including the three items from the drugstore. According to Rowland, Robertson and the store manager, Hurley, Mrs. Rice admitted taking the three items, and she offered to pay for them. This offer was refused, and the store employees took possession of the three items. At the request of the store manager, Rowland called the police and informed them that they had a shoplifter in "custody." Rowland then went to the Middlesboro city police judge from whom he obtained a warrant for Mrs. Rice's arrest. While the warrant was being obtained, a Middlesboro city policeman arrived at the store. The police officer took Mrs. Rice in the cruiser from the drugstore to the police station where she was subsequently served with the warrant of arrest.

A substantially different story was offered by Mrs. Rice and her daughter Debbie, who was twelve years old at the time of the incident. According to them, the makeup, lipstick and cologne as well as other items selected by Debbie were placed on top of the Rose's sack, not in it. Mrs. Rice testified that she carried all of the items by holding the Rose's sack against her body. She placed all of the items on the checkout counter and offered the cashier a social security check in payment. Debbie then separated the items she had selected from those that had been selected by her mother. According to Mrs. Rice and Debbie, the items selected by Debbie were placed in a SuperX sack with the sales receipt, and Mrs. Rice placed her items into the Rose's sack for the first time. Mrs. Rice testified that she did not check her change because her sister was at the front door urging them to leave quickly because of the heat in the car which was parked in the sun outside of the store. According to Mrs. Rice, she thought she had paid for the makeup, lipstick and cologne and, in any event had no intent to steal. She denied admitting that she had taken the items, and she asserted that she asked Hurley and Rowland to verify the purchase with the cashier or the sales receipt.

According to the store's theory of the case, Mrs. Rice placed the three items in the Rose's sack and never made any offer to pay for them at the cashier's station. According to Mrs. Rice's theory of the case, she did not put them in the Rose's sack until after she had placed them on the checkout counter and tendered the social security check as payment for all of the items which she and her daughter were purchasing.

■ In Kentucky, a private person may arrest only for a felony. A private person cannot make an arrest for a misdemeanor. KRS 431.005(2). Consequently, it has long been the law that it is no defense to an action for false imprisonment that a merchant had probable cause to believe that the plaintiff was committing a misdemeanor. *Jefferson Dry Goods Co. v. Stoess*, 304 Ky. 73, 199 S.W.2d 994 (1947). A number of states afforded a limited privilege of detention to a merchant having probable cause to believe that a person was shoplifting. See *Collyer v. S. H. Kress & Co.*, 5 Cal.2d 175, 54 P.2d 20 (1936). This limited privilege finds recognition in the *Restatement of Torts 2d* § 120A. However, the *Collyer* case was expressly rejected by this state's highest court in the *Stoess* case.

In an effort to give merchants some assistance in dealing with shoplifters, the legislature in 1958 enacted a statute providing merchants a limited defense to charges of false imprisonment. As amended, KRS 433.236(1) provides:

"A peace officer, security agent of a mercantile establishment, merchant or merchant's employe who has probable cause for believing that goods held for sale by the merchant have been unlawfully taken by a person, and that he can recover same by taking the person into custody, may,

*for the purpose of attempting to effect recovery, take the person into custody and detain him in a reasonable manner for a reasonable length of time."* (Emphasis added)

As originally enacted, this statute had no specific provision with respect to the right of arrest. Because a peace officer has a right to arrest for a misdemeanor without a warrant only if the misdemeanor is committed in his presence, KRS 431.005(1), a definite problem was presented by shoplifters of items having a relatively small value. In 1968, the legislature amended the shoplifting statute to provide:

"Any peace officer may arrest without warrant any person he has probable cause for believing has committed larceny in retail or wholesale establishments." KRS 433.236(2).

Thus, a peace officer may arrest a shoplifter without a warrant solely on the information provided by the merchant. The misdemeanor need not have been committed in his presence.

Mrs. Rice asserts that KRS 433.236 can provide no defense to SuperX and Rowland. She points out that a merchant is permitted to take a suspected shoplifter into custody and to detain him pursuant to KRS 433.-236(1) only for the purpose of recovering the goods from the suspected shoplifter. According to this interpretation of the shoplifting statute, the suspected shoplifter must be released as soon as the goods are recovered. The merchant has no right to detain the person until the arrival of a police officer who can make an arrest. See Note "The Merchant, the Shoplifter and the Law," 55 Minn.L.Rev. 825, 848–49 (1971).

On the other hand, SuperX and Rowland argue that the purpose of the shoplifting statute would be defeated if the merchant were required to release the shoplifter as soon as the goods were recovered. If the identity of the shoplifter were not known, the shoplifter might be able to escape prosecution. Under KRS 433.236(2), a police officer may arrest without a warrant for a misdemeanor not committed in his presence on the basis of probable cause to believe that the person has committed larceny in a retail or wholesale establishment. Probable cause would be supplied by information from the merchant. Therefore, it is argued that the merchant has a right to detain the suspected shoplifter until the arrival of the arresting police officer. A similar statute was so construed in *Cooke v. J. J. Newberry & Co.,* 96 N.J.Super. 9, 232 A.2d 425 (1967). However, the New Jersey statute also provided that a merchant would not be liable for causing the arrest of a person for shoplifting when the merchant had probable cause for believing that the person arrested had committed the offense. No such provision exists in the Kentucky statute.

In *Jacques v. Sears, Roebuck & Co.,* 30 N.Y.2d 466, 334 N.Y.S.2d 632, 285 N.E.2d 871 (1972), a store security officer stopped a suspected shoplifter as he was leaving the store. The suspect was detained in the store's security office for approximately twenty minutes until the arrival of city police who took the suspect to police headquarters. The New York shoplifting statute provided that a merchant had a right to detain a person in a reasonable manner for a reasonable time for "the purpose of investigation or questioning as to the ownership of any merchandise." In holding that the store was not liable for detaining the suspect until the arrival of the police, the New York Court of Appeals stated:

"Though not spelled out in section 218 of the General Business Law, the merchant's defense for reasonable detention extends, as a matter of implementing the policy of the statute if not as a matter of logical necessity, to the turning over of the suspect to the police under reasonable circumstances and the execution of an information or complaint necessary for his initial arraignment." 334 N.Y.S.2d at 640, 285 N.E.2d at 876.

The New York statute specifically authorizes detention for purposes of investigation. The Kentucky shoplifting statute does not.

■ However, if a merchant has the right to detain a person in order to recover his property, common sense dictates that

the merchant should make some investigation of the facts during the period of detention. Certainly, the merchant will want to verify the person's name and address. With this information, the merchant may find that the person has an extensive shoplifting record with the police. In other cases, the merchant may be able to ascertain that the person's failure to pay for the goods was due to inadvertence rather than criminal intent. Even if the merchant decides to have the person arrested, the information received during the investigation may justify releasing the person rather than continuing to detain the person until the arrival of the police. If the person has substantial ties in the community, the merchant may determine to file a complaint under RCr 2.02 rather than having the person arrested without a warrant. On the other hand, the person's refusal to state his or her name can justify the merchant's continued detention of that person. *Delp v. Zapp's Drug and Variety Stores*, 238 Or. 538, 395 P.2d 137 (1964). We conclude that a merchant's limited privilege to recover goods believed to have been stolen also includes the privilege to detain the person for the time necessary to make a reasonable investigation of the facts. See section 120A of the *Restatement of Torts (2d)*.[1]

■ In this case, we do not need to decide whether the shoplifting statute authorizes the merchant to detain a suspect after the goods have been recovered and any investigation completed when the sole purpose of the continued detention of the suspect is to permit an arrest by the police. Assuming that there was no valid arrest without a warrant pursuant to KRS 433.-236(2) when Mrs. Rice was taken into custody at the drugstore by the city policemen, it is clear that there was a valid arrest of Mrs. Rice pursuant to a warrant at the police station. Taking into consideration the distinction between an action for false imprisonment and an action for malicious prosecution, we conclude that Mrs. Rice is entitled

under the evidence to no more than nominal damages for the period of her detention after the goods were recovered and before she was arrested at the police station.

■ The distinction between actions for false imprisonment and actions for malicious prosecution was clearly set forth in *Roberts v. Thomas*, 135 Ky. 63, 121 S.W. 961, 21 Ann.Cas. 456 (1909):

"There is a well-marked distinction between an action for false imprisonment and an action for malicious prosecution. An action for false imprisonment may be maintained where the imprisonment is without legal authority. But, where there is a valid or apparently valid power to arrest, the remedy is by an action for malicious prosecution. The want of lawful authority is an essential element in an action for false imprisonment. Malice and want of probable cause are the essentials in an action for malicious prosecution."

See also Prosser, *Law of Torts* § 12 at 49 (4th ed. 1971). From the point in time when Mrs. Rice was lawfully arrested pursuant to the warrant, her detention could no longer be considered unlawful. After her arrest pursuant to the warrant, Mrs. Rice had only one possible claim for relief, an action for malicious prosecution. *F. S. Marshal Co. v. Brashear*, 238 Ky. 157, 37 S.W.2d 15 (1931).

■ A wrongful detention giving rise to an action for false imprisonment could be followed by an arrest which could be the basis for an action for malicious prosecution. See *Ira v. Columbia Food Co.*, 226 Or. 566, 360 P.2d 622, 86 A.L.R.2d 1378 (1961). However, in the present case, Mrs. Rice neither pled nor proved that the criminal charges against her had been finally terminated in her favor. In fact, there never has been a trial of her subsequent indictment. In the absence of a favorable final disposition of the charges, Mrs. Rice could not

---

1. "One who reasonably believes that another has tortiously taken a chattel upon his premises, or has failed to make due cash payment for a chattel purchased or services rendered there, is privileged, without arresting the other, to detain him on the premises for the time necessary for a reasonable investigation of the facts."

maintain an action for malicious prosecution. *Van Arsdale v. Caswell*, Ky., 311 S.W.2d 404 (1958).

Under the instructions given by the trial court, the jury was directed to return a verdict for Mrs. Rice if they believed she was detained "without authority of law" after the goods had been recovered from her even though the jury believed from the evidence that Rowland had probable cause to believe that Mrs. Rice had unlawfully taken the goods. The jury was also instructed to return such sum in damages as they found would "fairly and reasonably compensate her for being deprived of her liberty, for any impairment of her health, for any suffering, and for any shame, humiliation and mortification resulting directly from the affair." Trial counsel for SuperX and Rowland objected to both instructions on the grounds that any recovery for false imprisonment should be limited to the period of time between the recovery of the goods and the lawful arrest of Mrs. Rice. The objection was valid; the instructions were prejudicially erroneous. It is likely that the astronomical verdict in this case is attributable in part to this error in the instructions.

Furthermore, we conclude that the evidence establishes that Mrs. Rice did not suffer any substantial damages from any false imprisonment. By her own estimate, she was detained at the drugstore prior to the arrival of the city police for no more than twenty-five to thirty minutes. According to Mrs. Rice, the trip to the police station took "some five to eight minutes." She estimated that Mr. Rowland arrived at the station with the warrant some five to fifteen minutes afterwards. By her own estimate, the maximum period of her detention prior to being arrested pursuant to the warrant was less than one hour. According to all of the other witnesses, the period of detention was substantially less.

Mrs. Rice received no physical injuries during her detention. Mrs. Rice was touched only one time during her detention. She testified:

"A He put his hand on my shoulder and said, 'Come back to the back with me, ma'am.'

Q57 Just put his hand on your shoulder?
A Yes."

No vile language or violent threats were made against Mrs. Rice. She was offered the use of a telephone to call any person she wished. She was permitted to go out through the back of the store to avoid the embarrassment of seeing any friends or acquaintances while in the custody of the police.

Mrs. Rice's chief complaints are attributed to the newspaper publicity given to her *arrest* and the subsequent court proceedings. Mrs. Rice testified:

"It was in the paper several times. The paper is what destroyed me, because there are so many people that read the paper that want to believe everything they read."

There was nothing in the newspaper articles concerning her detention at the store. The newspaper articles dealt only with the proceedings following her arrest and could be relevant only to an action for malicious prosecution. We also note that Mrs. Rice offered no evidence of any special damages suffered by her as a direct result of the detention prior to the arrest.

Mrs. Rice's claim for damages is based upon her mental suffering and embarrassment resulting from her detention. However, in an action for false imprisonment, she can recover damages only for that mental suffering and embarrassment endured during the period of less than one hour prior to her arrest. As stated by the Supreme Court of Wisconsin in *Geldon v. Finnegan*, 213 Wis. 539, 252 N.W. 369, 373 (1934):

"It is considered that, where one falsely imprisoned is subsequently properly charged with the commission of a felony, the time and degree of his humiliation, mental anguish, and sense of disgrace due to his false imprisonment which would naturally and probably result is shortened and modified by the humiliation, mental anguish, and sense of disgrace due to his

lawful arrest, and so operates to mitigate the damages, both compensatory and punitive. *Comisky v. Norfolk & Western R. Co.*, 79 W.Va. 148, 90 S.E. 385, L.R.A. 1917D, 220. While we find no case which goes that far, it is considered under the facts of this case that the damages on account of humiliation, mental anguish, and sense of disgrace were in fact terminated by plaintiff's lawful arrest. How can one continue to suffer on account of an unlawful arrest and confinement after he has been lawfully arrested and confined for a felony it is difficult to see." Considering all of the evidence, we are of the opinion that Mrs. Rice was entitled to no more than nominal damages for the period of her detention after the goods were recovered until she was arrested, together with her costs in the trial court. See *Butcher v. Adams*, 310 Ky. 205, 220 S.W.2d 398 (1949).

If the jury believed from the evidence that Mrs. Rice placed the three items on the checkout counter and made an effort to pay for them, then the jury could also find that Rowland did not have probable cause to believe that Mrs. Rice had taken the items unlawfully. If a reasonably prudent person would not have believed Mrs. Rice was shoplifting, then the original detention was unlawful. In such case, Mrs. Rice might be entitled to more than nominal damages. However, it is evident that her damages were not substantial, and the jury's award of $75,000 compensatory damages was clearly excessive.

One further issue must be considered. Even if Rowland did not have probable cause to believe Mrs. Rice was shoplifting, the record shows that he did, in fact, believe she was taking items from the store unlawfully without paying for them. Before Mrs. Rice ever approached the checkout counter, Rowland reported to Robertson that she was placing items in the Rose's sack. The fact is uncontradicted that Rowland did find the makeup, lipstick and cologne in the Rose's sack after Mrs. Rice left the checkout counter and that she had no sales receipt for those items. There

being no evidence suggesting that Rowland did not in good faith suspect that Mrs. Rice had concealed some items in the Rose's sack, we find nothing in the record to indicate that Rowland or any other SuperX employee acted in bad faith or that the treatment of Mrs. Rice was grossly in excess of what the circumstances reasonably required, as perceived by Rowland and the other store employees. Under the circumstances, Mrs. Rice was not entitled to an award of punitive damages. It was error for the trial court to submit that issue to the jury. *Consolidated Sales Co. v. Malone*, Ky., 530 S.W.2d 680 (1975); *Jefferson Dry Goods Co. v. Stoess, supra.*

The judgment of the circuit court is reversed with directions to grant a new trial. If on a retrial of the case the evidence is substantially the same, the trial court shall submit to the jury the following issues: (1) Whether there was probable cause to detain Mrs. Rice for the purpose of investigation and recovering any goods of the store; and (2) if there was not probable cause, the amount of any compensatory damages limited to the period of any unlawful detention. If probable cause to detain Mrs. Rice did exist, then she shall be awarded only nominal damages and her costs.

All concur.