RENDERED:  MARCH 29, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0932-MR

RODNEY F. MORAN                                                         APPELLANT

v.
APPEAL FROM FAYETTE CIRCUIT COURT
HONORABLE JEFFREY A. TAYLOR, JUDGE
ACTION NO. 17-CI-00657

SCOTT JONES                                                             APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CALDWELL, COMBS, AND KAREM, JUDGES.

CALDWELL, JUDGE:  Rodney Moran appeals from a Fayette Circuit Court judgment awarding Scott Jones $225,000 in compensatory damages and $350,000 in punitive damages.  Moran argues the record does not support the compensatory and punitive damages awards.  We affirm for the reasons stated in this Opinion.

**FACTUAL AND PROCEDURAL HISTORY**

Moran hired Jones as a contractor to perform work in Moran's home. Moran told Jones he had placed cameras through the home as a security measure.

While working in Moran's home one day in early 2016, Jones used a bathroom. After using the toilet, Jones discovered a camera or video recording device positioned in a toilet brush holder to film the toilet area. Jones left the home with his workers and contacted police.

The police obtained a search warrant and discovered on Moran's cell phone photographic and video images of Jones using the bathroom. Moran was charged with voyeurism. Moran entered an *Alford* plea[1] to a lesser offense of harassment, no physical contact in late 2017.

Meanwhile, Jones filed a civil lawsuit against Moran in early 2017. Jones asserted an invasion of privacy claim and alleged he suffered emotional and mental injuries. He requested compensatory and punitive damages.

Moran was initially represented in the civil lawsuit by insurance defense counsel, who filed an answer on Moran's behalf. Moran's insurance company filed a declaratory judgment action in a separate division of the trial court. The insurance company argued it had no duty to defend Moran against Jones' civil lawsuit for invasion of privacy. In late 2019, a default judgment was entered in the declaratory judgment action holding that the insurance company had no duty to defend Moran against Jones' civil lawsuit.

---

[1] *See North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970). *See also Alford Plea*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining an *Alford* plea as: "A guilty plea that a defendant enters as part of a plea bargain without admitting guilt.").

Shortly thereafter, Moran's insurance defense counsel filed a motion to withdraw from representing Moran in Jones' civil lawsuit. Counsel stated that Moran had been served with a copy of the motion. The trial court granted the motion to withdraw in November 2019.

Jones filed a notice indicating he had served written requests for admissions on Moran in late 2020. In late 2021, the trial court entered a notice asking the parties to show cause why the case should not be dismissed for lack of prosecution. Shortly thereafter, Jones filed a motion for summary judgment or in the alternative for partial summary judgment on liability with a hearing on damages to be scheduled later. Jones attached as exhibits unanswered requests for admissions, his affidavit, and records from the criminal proceeding against Moran.

In December 2021, the trial court entered a written order removing the case from its show cause docket, granting partial summary judgment on liability in Jones' favor, and scheduling a damages hearing for February 2022. The damages hearing was later rescheduled on Jones' motion, with the written order indicating that Moran did not appear at the hearing to reschedule.

The trial court conducted an evidentiary hearing on damages in June 2022. Jones appeared with counsel. Moran was not present for the hearing. Nor did anyone appear on Moran's behalf. Jones testified at the hearing.

The trial court entered findings of fact, conclusions of law and judgment on July 1, 2022. The trial court found Jones' testimony to be persuasive.[2] The trial court noted that no evidence was presented by or on behalf of Moran. The trial court simply stated that, based on the evidence, Jones was entitled to $225,000 in compensatory damages and $350,000 in punitive damages.

A few weeks later, an attorney entered a notice of entry of appearance, stating he represented Moran. That same day, Moran also filed by counsel a CR[3] 60.02 motion asking the trial court to vacate its partial summary judgment on liability based on excusable neglect. He claimed that various court documents had been mailed to the wrong address and that he did not receive information about Jones' lawsuit or the declaratory judgment action.

---

[2] The trial court also found Jones' testimony to be supported by Jones' therapist's report. But we focus solely on Jones' testimony and not on his therapist's report in assessing whether damages are supported by the record because the therapist's report was not included in the record on appeal. *See* Kentucky Rules of Appellate Procedure (RAP) 25(B) ("The appellate court shall not consider any claim or contention which is based upon a portion of the record below that has not been made part of the record before the appellate court."). All appellate briefs in this case were filed after the Rules of Appellate Procedure took effect on January 1, 2023.

Jones attached a copy of the therapist's report in the appendix to his Appellee brief, but he stated that the report was missing from the court record and clerk's office. Items not included in the appellate record are not supposed to be attached to a brief's appendix. *See* RAP 32(E)(1)(c). Better practice would be to notify the circuit clerk of the omitted portion of the record so that the clerk could prepare a supplemental certification of the record and transmit the omitted portion of the record to this court. *See* RAP 25(C).

[3] Kentucky Rules of Civil Procedure.

The CR 60.02 motion was scheduled for a hearing on July 29, 2022. Moran filed a notice of appeal from the trial court's judgment awarding compensatory and punitive damages on August 1, 2022 – apparently before the trial court ruled on Moran's CR 60.02 motion to vacate the partial summary judgment on liability.

Moran argues in his appellate briefs that the compensatory damages award is not supported by the record and that the punitive damages award must be reversed or reduced. Jones' brief argues the opposite.

Moran notes in his appellant brief that his CR 60.02 motion to vacate the partial summary judgment on liability had not been resolved prior to his filing the notice of appeal from the judgment awarding Jones damages. And he states: "No grounds raised therein [in his CR 60.02 motion] regarding errors in service are, therefore, being raised herein, as the issue has not been ruled upon by the trial court."

Nonetheless, this Court became aware of the unresolved CR 60.02 motion alleging Moran's lack of notice of many court proceedings while reviewing the parties' briefs and arguments. In January 2024, this Court entered an order placing the appeal in abeyance for the trial court to resolve the CR 60.02 motion about notice, stating therein:

> This Court has determined that it is necessary to have the trial court resolve the issues raised in the CR 60.02

motion to ensure that the Appellant received constitutionally required notice and an opportunity to be heard on liability and other issues, before this Court resolves the issues raised about damages in this Appeal.

In February 2024, trial court denied the CR 60.02 motion, finding that Moran received "constitutionally required notice and an opportunity to be heard throughout the pendency of this case." Moran did not file a timely appeal from the denial of CR 60.02 relief.[4] So, we need not resolve any issues about notice as Moran has evidently abandoned any allegations of not receiving proper notice of proceedings. Instead, we confine our review to the issues he raises in this appeal about the awards for compensatory and punitive damages.

---

[4] Our order placing the appeal in abeyance also provided: "Appellant [Moran] shall tender to the Clerk of this Court a certified copy of the circuit court's order ruling on the CR 60.02 motion on or before 10 days from its entry." Moran failed to tender such a certified copy of the trial court's order denying the CR 60.02 motion within ten days of its entry on February 8, 2024. However, in late February 2024, Jones filed a response to our order of abeyance along with a certified copy of the trial court order denying CR 60.02.

We do not elect to sanction Moran or his counsel for failing to comply with our directions in the abeyance order as we leniently assume that the failure to comply was inadvertent. But we strongly caution counsel to pay attention to and comply with directions in court orders in the future to avoid serious consequences such as contempt findings.

## ANALYSIS

### Given the Lack of Preservation Statement, We May Review Only for Palpable Error Resulting in Manifest Injustice

Before we address the merits of Moran's arguments about compensatory and punitive damages, we note the lack of preservation statement in Moran's appellate briefs.

RAP 32(A)(4) requires that an appellant brief "shall contain at the beginning of the argument a statement with reference to the record showing whether the issue was properly preserved for review and, if so, in what manner." Failure to show how an issue was presented to the trial court and thus properly preserved for review can result in an issue being treated as unpreserved. *See Ford v. Commonwealth*, 628 S.W.3d 147, 155 (Ky. 2021) ("If a party fails to inform the appellate court of where in the record his issue is preserved, the appellate court can treat that issue as unpreserved."). This can affect the standard of review, as unpreserved issues can be reviewed only for palpable error resulting in manifest injustice. *See* CR 61.02 (A palpable error affecting a party's substantial rights may be reviewed on appeal "even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error.").

Despite any lack of detail or other deficiencies in the trial court's judgment, the damages assessed did not amount to palpable error resulting in manifest injustice given the evidence presented and controlling precedent.

**Compensatory Damages Award is Supported by Evidence and Does Not Amount to Palpable Error Resulting in Manifest Injustice**

Moran argues that the $225,000 compensatory damages award is not supported by the evidence. He notes that Jones testified to spending $700 to $800 for six or seven counseling sessions which did not begin until 2021 – about five years after the incident in Moran's bathroom. He also points to Jones' admission that he had not participated in therapy in the two months leading up to the damages hearing. He contends Jones' stated desire to have Zoom counseling sessions twice a month for two or three years is inconsistent with Jones' past course of treatment.

Moran also argues that Jones failed to mitigate his damages because he waited about five years to seek treatment. And he points to Jones' admission that a counselor at a police station advised him to seek counseling back in 2016. He also asserts the trial court failed to address the alleged lack of mitigation of damages in its judgment.

Lastly, Moran argues in his reply brief that one must guess at whether the compensatory damages award is for medical expenses, emotional pain and suffering, or both. He contends: "An award must be clearly delineated to permit meaningful appellate review, otherwise pure hypothesizing on appeal could cause

any vague award to be supported." We certainly agree that trial courts should clearly identify the bases for compensatory damages awards. However, despite the lack of express statement in the judgment identifying whether the compensatory damages award was for medical expenses or emotional pain and suffering or both, the award was clearly for emotional pain and suffering.

The trial court asked at the damages hearing whether Jones was seeking medical expenses and Jones replied yes. But Jones did not specifically request medical expenses in his complaint. Instead, he simply alleged in his complaint mental and emotional pain and suffering for which he sought compensatory and punitive damages. There is no indication in the record that Jones formally sought to amend his complaint to conform to the evidence. *See* CR 15.02. And the trial court did not explicitly award anything for medical expenses in its judgment.

Clearly, the crux of Jones' complaint was seeking damages for mental and emotional suffering. And given Jones' testimony about his suffering humiliation and anxiety and PTSD[5] for an extended period, the trial court's award of $225,000 in compensatory damages for mental and emotional pain and suffering is supported by substantial evidence.

---

[5] Post-Traumatic Stress Disorder.

Moran argues that the $225,000 award was clearly excessive. He cites a case in which a $75,000 compensatory damages award for mental anguish was set aside on appeal as excessive. *See SuperX Drugs of Kentucky, Inc. v. Rice*, 554 S.W.2d 903 (Ky. App. 1977). But that case is factually distinguishable.

In *Rice*, the plaintiff had been briefly detained at a store on suspicion of shoplifting before she was taken to the police station and arrested. *Id*. at 905. She later filed suit against the store for false imprisonment. *Id*. at 904. The Court of Appeals discussed the extent of a store's privilege pursuant to statute to detain a customer for a reasonable time if there was probable cause to suspect shoplifting. *Id*. at 905-06. Noting the lack of physical injury, this Court ultimately determined that the plaintiff was entitled to compensatory damages only for the mental pain and suffering experienced during the less than one-hour period of detention before her arrest. *Id*. at 908-09.

In contrast to the plaintiff in *Rice*, we are not aware of any reason to limit Jones' recovery for emotional pain and suffering to that suffered immediately upon the discovery of the bathroom recording device. And even assuming *arguendo* that Jones could have reduced his emotional pain and suffering by seeking counseling sooner, the award of $225,000 in compensatory damages is not palpable error resulting in manifest injustice.

Jones testified about suffering long-term humiliation and anxiety due to being photographed and video-recorded on the toilet at Moran's house. He also testified about his fears that these recorded images or video would be posted on the Internet – despite the lack of evidence such images were previously posted on the Internet. The facts of this case do not resemble the one-time unrecorded event of a store briefly detaining a suspected shoplifter in *Rice*.

Furthermore, more recent precedent indicates that more substantial awards – in the hundreds of thousands of dollars – may be properly awarded for emotional pain and suffering in appropriate cases. *See Banker v. University of Louisville Athletic Association, Inc.*, 466 S.W.3d 456, 464 (Ky. 2015) (upholding judgment on jury verdict awarding $300,000 for emotional distress as: "Banker and her mother testified that Banker suffered significant emotional distress both before and after her wrongful discharge. And, while we might not have awarded the amount this jury did, we cannot say that the damage award bore no relationship to the evidence of loss. Thus, we hold that the trial court did not abuse its discretion by refusing to alter the jury's finding.").

Similarly, regardless of whether this Court would have awarded the same amount in compensatory damages for emotional pain and suffering as the trial court did here, "we cannot say that the damage award bore no relationship to

the evidence of loss." *See Banker*, 466 S.W.3d at 464. Like the plaintiff in *Banker*, Jones testified to suffering significant emotional distress.

Furthermore, though more detail and clearer delineation of what exactly compensatory damages were awarded for would have been preferable, the trial court's award of $225,000 compensatory damages without specific delineation of damages for medical expenses or mental pain and suffering was not palpable error. This is especially true since Moran failed to seek additional findings about the compensatory damages award. *See* CR 52.04 ("A final judgment shall not be reversed or remanded because of the failure of the trial court to make a finding of fact on an issue essential to the judgment unless such failure is brought to the attention of the trial court by a written request for a finding on that issue or by a motion pursuant to Rule 52.02.").

In short, there is no palpable error rising to the level of manifest injustice in the compensatory damages award. Next, we address Moran's arguments about the punitive damages award.

**Punitive Damages Award is Not Unconstitutionally Excessive**

Moran argues the award of punitive damages was unwarranted and/or excessive, noting the $350,000 punitive damages award was many times the amount of Jones' past expenditures for therapy (approximately $700 to $800). But

more relevantly, the punitive damages award was less than two times the compensatory damages award ($225,000).

Our precedent indicates we should compare the punitive damages award to the total compensatory damages award – not just to any smaller amount in medical expenses proven – when assessing whether punitive damages were unconstitutionally excessive. *See R.O. v. A.C. ex rel. M.C.*, 384 S.W.3d 185, 191-92 (Ky. App. 2012) (determining that $6 million punitive damages award was not unconstitutionally excessive since it was less than three times the total compensatory damages award, which consisted of $2 million for emotional distress and physical pain and suffering and about $41,000 for medical expenses).

The standard of review for determining the constitutionality of a punitive damages award is *de novo* (without deference). Precedent calls for considering at least three factors in determining if a punitive damages award is unconstitutionally excessive. *McDonald's Corp. v. Ogborn*, 309 S.W.3d 274, 298 (Ky. App. 2009).

The factors a court should consider in determining whether a punitive damages award is unconstitutionally excessive include: "(1) the degree of reprehensibility of the defendant's conduct, (2) the disparity or the ratio between the harm or potential harm suffered by the plaintiffs and the punitive damage award, and (3) the difference between the punitive damage award and the penalties

-13-

imposed for similar misconduct." *Yung v. Grant Thornton, LLP*, 563 S.W.3d 22, 65 (Ky. 2018). The most important of these factors is the degree of reprehensibility of the defendant's misconduct. *Id*. at 66.

Reviewing these factors identified in precedent, the trial court's $350,000 punitive damages award is not unconstitutionally excessive. The conduct at issue – surreptitiously recording individuals on the toilet – is reprehensible with no legitimate justification. (Even monitoring a home to prevent theft could be done by placing cameras in other places in the home without pointing a camera directly at a toilet seat.)

And given Jones' testimony about long-standing emotional pain and suffering related to this incident and fears of recorded images being posted on the Internet, we cannot say that there is a significant disparity between the actual harm suffered and the punitive damages award. The difference between the compensatory damages award and the punitive damages award here is not that great. The $350,000 punitive damages award is roughly one-and-a-half times the $225,000 compensatory damages award.

Furthermore, the conduct at issue here – surreptitiously recording persons in stages of undress – may result in criminal charges such as the voyeurism charges made here or may result in large damages awards in civil lawsuits. *See in re Dardinger*, 566 B.R. 481, 492, 2017 WL 1406453 (Bankr. S.D. Ohio 2017) (in

-14-

federal bankruptcy proceedings, noting the entry of an Ohio state court judgment awarding a plaintiff who was repeatedly and surreptitiously video-recorded while in a state of undress over $100,000 in compensatory damages for claims including intentional infliction of emotional distress and nearly $2 million in punitive damages). We recognize that this extra-jurisdictional authority is not controlling, but we cite it as persuasive authority in the absence of published Kentucky appellate opinions illustrating the point that large damages awards may not be wholly unexpected in civil actions filed due to surreptitious recordings of people in a state of undress.

In sum, the punitive damages award was not unconstitutionally excessive. Nor did it amount to palpable error resulting in manifest injustice given the facts and circumstances of this case.

Further arguments and issues raised by the parties in their appellate briefs have been determined to lack merit or relevancy to our resolving this appeal.

**CONCLUSION**

For the foregoing reasons, the judgment is AFFIRMED.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Noah R. Friend
Versailles, Kentucky

BRIEF FOR APPELLEE:

Edward L. Cooley
Lexington, Kentucky